SAMUEL MOORE et al., Plaintiffs in Error, *v.* H. S. FOOTE, Governor, &c., Defendant in Error.

1. TAXES: ASSESSOR'S LIST.—It is not necessary, in order to enable the sheriff and tax-collector to collect the county taxes, that there should be any mention or reference whatever in the assessor's list, either as to the separate share of each tax payer, or the total amount, or the rate per centum of the county levies; all that is required, is, that the sheriff or tax-collector shall have in his possession the assessor's list, complete and perfect, so far as it relates to the State tax, and the order of the Board of Police, fixing the rate of the county levies.

2. SAME.—The term "levy," when applied to the action of the Board of Police in relation to the county taxes, imports not only the ascertainment of the amount necessary to be raised for the county taxes, but also the performance of all such acts by the Board of Police, as would authorize the tax-collector to proceed to collect them.

3. SHERIFF AND TAX-COLLECTOR : OFFICES DISTINCT.—The offices of sheriff and tax-collector, although required by law to be held by the same person, are separate and distinct, requiring separate official bonds and oaths; hence, the statute, Hutch. Dig. 450, § 1, which prohibits an action against the sureties of a sheriff on his official bond as such, unless the sheriff be joined with them, or his liability has been first fixed, does not apply to actions on the bond executed by a sheriff or tax-collector.

IN error from the Circuit Court of Carroll county. Hon. F. M. Rogers, judge.

H. S. Foote, as Governor of the State, and successor in office to Joseph W. Matthews, sued Samuel Moore, John C. M'Carty, Richard J. Johnson, J. Durdin, O. L. Kimbrough, James Z. George,

P. H. Browne, J. M. Blount, and James Young, sureties of W. P. Bole, sheriff of said county, on his official bond as tax-collector, for the non-payment of the county special and poor taxes, for the year 1850, to the amount of $2180, which, it was alleged and admitted, had been collected by said Bole, and that he had failed to pay over. The defendants demurred to the complaint, and the demurrer, by agreement, was extended to the following agreed state of facts: " The assessor's list, or assessment roll for said year, did not contain a separate column, in which was set down the amount of county taxes due from such tax payers; nor was there any mention, either in figures or words, on such assessment roll in relation to any of the county taxes, contained in the declaration, nor any county tax whatever, either as to the total amount levied, or the separate share of each tax payer, or in any other respect whatever; nor any statement that any county tax had been levied by the Board of Police of Carroll county, for the year 1850. That the assessment roll, so far as the State tax is concerned, is in all respects legal and regular. It is further agreed, that the Board of Police did legally levy a county special and poor tax for said year, and of the sum so levied, the sum of $2180.84 was not paid into the county treasury, which amount, it is agreed, was collected by said Bole, sheriff and tax-collector, as aforesaid, and that he failed to pay over the same." Bole had died previous to the institution of the suit, and his administrator was not joined in this action.

The Circuit Court overruled the demurrer, and judgment final was, by the agreement of the parties, thereupon entered against the defendants, and they sued out this writ of error.

*Fulton Anderson* and *T. J. Wharton*, for plaintiffs in error.

The question presented by the record is, whether the sheriff, without any assessment for county taxes could, upon the action of the Board of Police, proceed to collect a certain per cent. on the amount of the State tax, for the county special and poor taxes.

In the first place, nothing is clearer than that there must be a legal assessment, before the collector can proceed, and if he does proceed without such assessment, he is a trespasser, and the State or county acquires no right whatever to the sums collected by him;

but the tax payer can recover the same from him, by an action for that purpose. *Thuston* v. *Little*, 3 Mass. R. 429 ; *Doughty* v. *Hope*, 1 Comstock, R. 79; *Blossom* v. *Cannon*, 14 Mass. R. 177 ; *Grainger* v. *Parsons*, 2 Pick. 392.

The case in 1 Gill's Reports, referred to by the defendant in error, has no application.    In that case, the question was not, whether a legal assessment had been made, but whether the law under which the collector acted, was a constitutional law.  But all the authorities concur, that unless an assessment is made according to law, the tax is not due, and the collector has no power or right to collect. Hence, it follows, if there be no assessment or an illegal assessment, the State or county as the case may be, has no right to the tax levied.

The question then is, was an *assessment* for county purposes, necessary in addition to the action of the Board of Police levying the tax ?    The distinction between the levy of a tax, and the *assessment* of a tax, or the assessment of the amount which each tax payer is to pay, is manifest; the levy of a tax is the legislative act, by which a tax is *raised* or proposed to be raised.    The assessment is the act of the officer appointed by law to ascertain the amount due from each tax payer, which the collector is clothed with power by the law to collect.  It might as well be contended that the act of the legislature, authorizing or requiring a certain amount of taxes to be raised in a certain way, is an assessment of the taxes, as that the act of the Board of Police, which in this respect exercises a legislative power, is an assessment of the tax levied by said Act.

The Act of 1846, prescribes the mode of assessment : it is therein provided, that " the number of acres of taxable and untaxable and vacant lands, as the case may be, shall be added up in their respective columns, also the value of the lands, and the sum of each shall be placed at the bottom of each, under their respective columns, then the *amount* of taxes at the right hand of each page shall be added up, and the said assessors shall then enter the amount of taxes that are due on the aggregate value of the taxable lands at the bottom of the page, which must agree with the aggregate amount of taxes on the right hand, or tax column of said lists," &c.    Hutch. Code, 188, § 16.

The Act of 1850, prescribes the same mode of assessment as to personal property. Acts of 1850, p. 45, § 4.

From these Acts, it is evident that the assessor, in making out his assessment, must ascertain the amount due from each tax payer. This will be more evident by reference to the 5th section of the Act of 1846. Hutch. Code, 185, § 5.

The payment of taxes, is not merely a liability of the property of the tax payer, but a personal duty due from him to the tax-raising power, and before you can proceed to collect by distress or levy, or even demand on him to pay, it is essential that the amount due by him shall be ascertained by the assessment, and for that reason it is that the law has required that the amount of the tax which he is to pay shall be stated, and set down by the assessor in a separate column on his tax list.

This duty is not fulfilled by the statement of the amount due to the State; on the contrary, the assessment roll should ascertain the whole amount due to the county and State, for this reason. The tax payer had the right to appeal to the Board of Police to correct the tax list if too much was assessed against himself. But in this case he could not do that, as far as the county tax was concerned, because the assessment roll, to which only he could look, gave him no information on the subject. Upon the examination of that, he would find that he was assessed with a certain amount, which might not, and probably would not be more than he believed to be due, but when the collector came to collect the taxes, he would find, not only that the amount assessed to him was demanded, but in addition, fifty or one hundred per cent. on that amount.

The case referred to in 21 Pick., by defendant in error, has no application in that case; it was decided that what was called the reduced value of the assessed property need not be stated in a separate column, because that provision of the statute was only directory. In that case it is sufficiently clear, that the amount of tax actually due was assessed, and the only objection made to the assessment was, that the reduced value of the assessed property was not stated in the tax list, which reduced value was by law to be a *certain per cent.* less than the value found by the assessor. The court decided that the Act itself did not require

such reduced value to be stated, and if it did, it was only directory, as it was not *essential* to inform the tax payer how much he was liable to pay. But the principle recognized in the case, that whatever was essential to inform the tax payer as to his liability, was not merely directory, but was a condition precedent to the validity of the tax, is all that we demand, and applied in our favor, must reverse the judgment.

In addition to the foregoing views, the court will find in Hutch. Code, 450, the statutory provision, which requires that the liability of the sheriff, shall be first *fixed*, when a surety is sued on his bond, and the sheriff himself is not a party. There was a demurrer to the declaration, and besides in the agreed *facts*, it will be seen that it is understood that the case as thus made out, shall be considered as demurred to, which fully presents the point last made.

*W. B. Helm*, for defendant in error.

The point relied on by plaintiffs in error, in this case, arises out of the assessment roll which they say is illegal, because of the failure of the assessor to compute and set down in a separate column in his assessment list, the amount of county tax due from each tax payer. They urge that this failure of the assessor, releases the sureties of the collector from all liability to pay over the county tax which, as they themselves admit, was collected by him. I am of opinion that the statute makes no such requirement of the assessor. It does make it his duty to assess the polls, personal and real property, in his county; and it further requires him, in so doing, " to set down in a book or roll, in separate columns, in full, the names of all the taxable inhabitants of the county, and each item of taxation, whether taxed *ad valorem* or otherwise." Hutch. Code, 185, art. 17, § 4.

Directions are also given, as to the form and manner of making his land book, and how the lands shall be assessed. All of which requirements, it will be admitted, were complied with. I can find no statute directly requiring the assessor to keep a separate column for the county tax. It is true, that law authorizes the auditor to prescribe forms for the government and direction of assessors; but these forms are entirely directing, and are given with the view only

to facilitate business, and to insure correctness, and to enable the tax payer to see readily if his tax is correct, by thus laying down rules and forms to govern these officers in the mechanical part of their duty.    They cannot be regarded as conditions precedent to the validity of the tax; if so, its validity might be made to depend entirely upon the auditor.    These measures only which are intended for the security of the citizens for answering equality of taxation, and to enable every one to know for what polls, and for what property, real and personal, he is taxed, are conditions precedent.    If these are observed, he is legally taxed.    21 Pick. 67.

Even admit that the statement of the county tax due from each tax payer, in a separate column, was a positive requirement of law, advantage of the assessor's non-compliance therewith could not, I humbly conceive, be taken by the collector.    It is a point which might with force be urged by the tax payer in resisting the payment of the tax, but never by the officer who has collected and refuses to pay it over.

Now it has been decided that the tax payer himself cannot plead an omission of this kind, on the part of the assessor, as a ground for not paying his tax; and that too, when the statute expressly required the county tax to be set down in a separate column. *Torrey* v. *Millburg*, 21 Pick. 64; *Blackburn* v. *Walpole*, 9 Ib. 27; *Dillingham* v. *Snow*, 5 Mass. 558.

Now if the tax payer, who has the right before his property can be taken for public use, to demand the strictest and most exact compliance with all of the requirements of the laws—for he alone is, and can be injured by a failure so to do—will not be heard to urge an objection of this kind in resisting the payment of his tax, with how much less show of reason and justice could it be then heard from the officer who has collected it from him, and refuses to pay it over.

The collector will not be allowed to plead the unconstitutionality of the law under which he collected.    This question might, say the court, properly arise between the State and tax payer, but cannot be urged by the collector.    *Waters et al.* v. *The State*, 1 Gill, 302.

It is not the assessor's business to assess the taxes, it is his duty to assess the value of the property, and number of polls in the

county, and thereupon, the law assesses the taxes to be collected. The tax may be, and generally is fixed before the assessment is made. In this case, the Board of Police had fixed the county tax at 100 per cent. on the State tax. The assessor had reckoned and set down, in separate columns, the State tax. Now, the main failure on his part, to set down the county tax,—the failure to make a simple calculation,—cannot surely render the county tax invalid. The omission to do an act which the collector could do, and did do, cannot surely vitiate all of the proceedings as far as the county is concerned. The collector does not derive his authority to collect from the assessment roll; that is intended only as a guide to designate to him the persons and property from whom, and upon which, taxes are to be collected. The collector can collect taxes from persons who have never been assessed. It is admitted that the taxes were collected and never paid over. It is not denied that the proper amount was collected; but it is gravely urged as a reason why the collector and his sureties should not be forced to pay the amount collected, that the collector computed the amount of county tax instead of the assessor.

It could be argued, with as much force and justice, that a sheriff and sureties were not liable for money collected upon an execution technically defective.

If the collector knew how much, or what per cent. upon the State tax had been ordered by the Board of Police to be collected, he could compute the amount and collect it, and his act would be valid; no one would have a right to object, save the tax payer, and he only on the ground that there was error in the amount taxed.

1. We contend that the assessment was right; that the taxes collected were the legal taxes.

2. That if there is any error in the assessment, it is merely formal, and does not invalidate the assessment roll; an error which might lay the assessor liable to reprimand, but not such as will screen a defaulting officer and his sureties from paying the amount collected.

*W. Brooke,* on same side.

HANDY, J., delivered the opinion of the court.

This was an action brought in the name of the Governor of this State, for the use of the Board of County Police of Carroll county, against the plaintiffs in error as sureties on the bond of William P. Bole, as tax-collector for Carroll county, to recover a certain amount of county taxes for the year 1850, collected by that officer, and remaining unpaid. The principal being dead when the suit was instituted, it was brought against the sureties alone.

The case was determined in the court below upon demurrer to the declaration, and upon an agreed state of facts, upon which it was submitted, whether the plaintiff was entitled to recover, and which are in substance as follows :—That the assessor's list, or assessment roll, for the year 1850, did not contain a separate column on which was set down the amount of county taxes due from the tax payers of the county, nor was there any mention on said assessment roll in relation to any of the county taxes sued for, nor any county tax stated therein, either as to the total amount levied or the separate share of each tax payer, or in any other respect whatever; nor any statement that any county tax had been laid by the Board of Police for that year; that the assessment roll, so far as the State tax is concerned, was in all respects legal and regular, and that the Board of Police did legally levy a county special and poor tax for that year, and of the sum so levied, the tax-collector, Bole, collected the sum of $2180.84, which he failed to pay over.

Upon this submission, judgment was rendered for the plaintiff, and the defendants below have brought the case here for revision.

It is admitted that the assessment list, of the description stated in the agreement, was duly delivered to the tax-collector, and that in virtue of it he collected the taxes sued for; and the question is, whether such collection created a liability upon his official bond upon his failure to pay over the moneys so collected.

It is insisted in behalf of the plaintiffs in error that, in order to constitute a valid assessment, it was essential that the assessment list which came to the tax-collector's hands, and upon which it was his duty to collect the taxes from the persons therein named, should distinctly specify the sums due from each individual tax payer,

both for his State and county taxes, and as the assessment list in question did not contain any such specification as to the county taxes, there was no legal assessment as to those taxes; and there could be no legal collection of them, because the tax-collector had no authority in law to make the collections, and therefore that no liability was created thereby upon his official bond.

In support of this view, the counsel for the plaintiffs in error rely upon the provisions of the 16th section of the Revenue Act of 1846, Hutch. Code, 188, which is as follows: "The number of acres of taxable and untaxable and vacant lands, as the case may be, shall be added up in their respective columns, also the value of the lands, and the sum of each shall be placed at the bottom of each page, under their respective columns; then the amount of taxes at the right hand of each page shall be added up, and said assessors shall then enter the amount of taxes that are due on the aggregate value of the taxable lands, at the bottom of the page, which must agree with the aggregate amount of taxes in the right hand or tax column of said lists; and in like manner shall each page be proven to be correct; and at the end of the assessment lists they shall recapitulate the sums of each page, and make the taxes upon each sum of the aggregate value of the whole lands of their counties respectively, agree with the aggregate amount of the whole taxes in the right hand or tax column."

We do not perceive the particular object of these provisions, unless they were intended to be merely directory to the assessor, in order to insure greater accuracy and regularity in his assessment lists. They apply only to lands, and it is not to be supposed that, if it had been intended to prescribe the mode in which the assessments should be stated by the assessor, and without which they should not be valid, so large an amount of the taxable property in the State as consists of personal estate, would have been omitted in the regulation. It is true, that the subsequent Act of 1850, ch. 1, § 4, made a similar provision with regard to personal property; but this does not tend to show that the former Act contemplated more than is above suggested, nor that either or both of the Acts intended any thing further than to prevent errors in the assessment lists, and to render them more plain and satisfactory to

the accounting officers, to whom the moneys were to be paid by the tax-collector. It was, therefore, a matter not affecting the assessment, but merely a directory regulation as to a matter of detail in making out the assessment lists, with a view to greater certainty and accuracy in these documents upon which the State and county finances depended, and which, as public records, it was deemed proper to have as full and explicit as possible; and we do not think that the regulation was a condition precedent to a legal assessment.

It is certainly true, that there can be no collection by the tax-collector which will create a liability on his official bond, unless there has been a legal assessment. But what is required to constitute a legal assessment?

The 4th section of the Act of 1846, above cited, requires "that in each and every year, the tax-assessors shall assess all the polls, and all the real and personal property subject to taxation in their respective counties; they shall prepare an assessment roll, in which he shall set down, in separate columns, the names in full, of all the taxable inhabitants of the county, and each item of taxation, whether taxed *ad valorem,* or otherwise." Hutch. Code, 184. This is the portion of the law which we think was intended to prescribe the duties of the assessor, as to the mode in which the assessment was to be made. And it is sufficiently full and explicit for all useful, practical purposes. It makes it his duty " to assess all the polls, and all the real and personal property subject to taxation in his county," and points out the mode in which this shall be done. His main duty is to ascertain and *state the value* of all the property, &c., within his county. When his roll is completed, he is required to return it to the Board of Police, and until he does that, no connection exists between him and that tribunal. He makes his assessment and valuation of the taxable property in his county, wholly independently of the Board of Police. He has no information in relation to the amount of money required to be levied—his proper functions do not require that he should have such information, nor does the law make any provision for communicating it to him; consequently, without that he would be totally unable to ascertain or state upon his roll the amount of county

taxes which each tax payer was required to pay. The settlement of the amount of money required to be raised for the county use, and of the rate per centum upon the State tax to be paid by each tax payer, is exclusively and necessarily the province of the Board of Police. If this were done by the assessor, it would not be merely an *assessment* of the amount and value of the taxable property and means of the county, but virtually a levy of the county tax, which is wholly foreign from his functions as assessor, and which would render it unnecessary for the Board of Police to make the levy.

It is admitted by the demurrer to the declaration, and the agreed facts, that the amount of the State tax of each tax payer, was stated in the assessment roll, and that the county taxes sued for, were duly levied by the Board of Police, but that neither the aggregate amount of the county tax, nor the amount thereof due by each tax payer, was stated on the assessor's list.

The term *levy*, imports the ascertainment of the amount necessary to be raised for the county taxes, and the performance of such acts by the Board of Police, as would authorize the tax-collector to proceed to collect the taxes. Under the admission in the pleadings, that the Board *legally made the levy*, it must, therefore, be taken, that they fixed the amount to be raised, and took such other steps as were necessary to authorize the tax-collector to make collections—because otherwise, there could not have been a legal levy of the amount of taxes. The admission of the pleadings and agreement would go to the extent of admitting the authority of the tax-collector to collect, so far as his authority was dependent upon acts to be done by the Board of Police, only denying that the amount of the county taxes was specified in the assessment list. It is not material to conjecture how the amount required to be collected was communicated to the tax collector; but it may well be presumed, that it was by an order of the Board of Police, requiring him to collect a certain per centum upon the amount of State taxes.

We think that if this course was adopted, it was sufficient to authorize the tax-collector to collect the county taxes. When the rate of county taxes is fixed at a certain per centum, upon the

State taxes, which are specified in the assessment roll, it is a mere matter of computation what amount each tax payer shall pay, which he can readily make, having the right to examine the assessment roll to ascertain the amount of the State tax, and the order of the Board of Police fixing the rate of county taxes, both of which must be in the possession of the tax collector. No injury, therefore, can arise to the tax payer by reason of the uncertainty in the amount of his taxes. All the means of rendering the amount certain, are subject to his examination, when he comes to pay his taxes, and the matter does not, therefore, appear to be different in principle from an execution in the sheriff's hands, requiring him to levy a specified sum of money, with interest from a stated time, until paid, which could not be pretended to be void for uncertainty, as to the amount due for interest.

We are, therefore, of opinion, that the assessment and levy, as they must be regarded in this case, were legal, and that the tax-collector was liable, on his official bond, for moneys collected thereupon.

Another point remains to be considered. It is contended, that the action should not be maintained against the plaintiffs in error, who were sued alone, as sureties, because the liability of Bole, the principal, had not been fixed, as was required by the Act of 27th of February, 1836, § 1; Hutch. Code, 450.

Without further consideration of that statute, it is sufficient to remark, that it applies in terms only to sheriff's bonds. This action was brought on a tax-collector's bond; and although the statute subsequently passed, provides that the duties required by law to be performed by the tax-collector, should be performed by the sheriff, yet the intention of the law is merely, that the same individual shall perform the duties of both offices. They are, however, separate and distinct, and in addition to the bond of the individual as sheriff, the statute requires him to execute a bond, and take an oath of office, as tax-collector. 1846, §§ 32, 48, 49; Hutch. Code, 191, 194. The duties and responsibility of the individual in the different capacities in which he acts, are as distinct as though each office was held by a different individual. A rule of proceeding, therefore, prescribed by statute, with express refer-

ence to sheriff's bonds alone, cannot, with any reason, be extended to tax collector's bonds, which, at the time the statute was passed, had no connection with the office of sheriff.

We are of opinion, that the judgment is correct; and it is affirmed.

The plaintiffs in error applied for a re-argument, but it was refused.

NOTE.—This case was decided at the December Special Term, A. D. 1855, and omitted to be reported among the cases decided at that term.