[L. A. No. 16757. In Bank.—June 28, 1939.]

THE PEOPLE, Appellant, v. PAUL MAHONEY, Respondent.

Maurice J. Hindin for Respondent.

Wyckoff, Gardner & Parker and Hubert Wyckoff, Jr., as *Amici Curiae,* on Behalf of Respondent.

SHENK, J.—This in an appeal by the plaintiff from a judgment on a directed verdict in favor of the defendant in an action to recover alleged delinquent sales taxes.

The complaint alleged that the defendant was a retailer selling tangible personal property, and as such was liable to the State of California for certain sales taxes, penalties, and interest on account of business done from April 1, 1934, to June 30, 1937, pursuant to the provisions of the Retail Sales Tax Act (Stats. 1933, p. 2599, as amended, Stats. 1935, pp. 1225 and 1252, and Stats. 1937, pp. 1326 and 2222). The defendant answered, denying that he was indebted to the state for sales taxes in any amount whatsoever. At the conclusion of the plaintiff's case a motion for a nonsuit was denied. When the evidence was all in the court granted the defendant's motion for a directed verdict. In addition to the appeal from the judgment an appeal from an order denying the plaintiff's motion for a new trial was noticed. The latter appeal is dismissed for the reason that the order is not appealable. (Code Civ. Proc., sec. 963; *Perumean* v. *Wells.* 8 Cal. (2d) 578 [67 Pac. (2d) 96].)

In the proceeding against the defendant the board purported to act on information in its possession that the defendant had made incomplete and insufficient returns on the business conducted by him and that he should be required to pay an additional tax on his retail sales. In this respect the board acted under the authority granted by section 17 of the act which provides in part as follows:

"For the purpose of the proper administration of this act to prevent evasion of the tax hereby imposed, it shall be presumed that all gross receipts are subject to the tax hereby imposed until the contrary is established. If the board is not satisfied with the return and payment of the tax made by any retailer, it is hereby authorized and empowered to make an additional assessment of tax due from such retailer based upon the facts contained in the return or upon any information within its possession or that may come into its possession."

In support of its case the plaintiff offered in evidence the defendant's "Application for Permit to Engage in Business as a Retailer", dated September 28, 1934, and to conduct a cafe at 2811 Ocean Park Boulevard, Santa Monica, and an application dated April 27, 1937, to conduct a similar business at 2921 Ocean Park Boulevard. There was also received in evidence on behalf of the plaintiff a duly certified Certificate of Sales Tax Delinquency, dated February 8, 1933, showing that the State Board of Equalization had made the assessment of the sales taxes against the defendant to enforce the collection of which this action was brought.

The record does not disclose the grounds on which the trial court directed the verdict. ■ The main argument of both parties is addressed to the question of the sufficiency of the certificate of delinquency, issued pursuant to section 30 of the act, to establish a *prima facie* case for the state, and that question is therefore the principal question on this appeal. Section 30 provides, in part, that the board may bring an action in the name of the people to collect the "amount delinquent together with penalties", and that "in such action a certificate by the board showing the delinquency shall be *prima facie* evidence of the levy of the tax, of the delinquency and of compliance by the board with all provisions of this act in relation to the computation and levy of the tax".

The defendant does not question the effect of the foregoing language as establishing *prima facie* the facts which it purports to establish, but contends that the certificate of delinquency under that section does not establish a *prima facie* case as distinguished from *prima facie* evidence of such facts. It is also pointed out that in addition to the introduction of the certificate of delinquency the plaintiff introduced documentary evidence of certain returns submitted by the defendant to the board of retail sales during some of the time in question and of payment of the sales tax in accordance with those returns. It is then argued that in order to prove its case it was necessary for the plaintiff to prove that the defendant transacted more business than his returns showed and that the certificate of delinquency could not serve to establish *prima facie* that such additional business was done.

Section 1833 of the Code of Civil Procedure provides: "*Prima facie* evidence is that which suffices for the proof of a particular fact, until contradicted and overcome by other evidence . . . ", and section 1824 of the same code provides: "Proof is the effect of evidence, the establishment of a fact by evidence". (See *Moore* v. *Hopkins,* 83 Cal. 270 [23 Pac. 318, 17 Am. St. Rep. 247].) Proof is something more than evidence. When, therefore, the certificate of delinquency is made *prima facie* evidence of the facts it purports to establish under section 30 of the act, it is proof of those facts and as such is sufficient to prove the case for the plaintiff "until contradicted and overcome by other evidence".

Without the benefit of section 30 of the act it is assumed that in order to make out a case against a delinquent taxpayer under this statute it would be necessary for the state to prove that the tax had been levied in accordance with the statute; that the defendant had been engaged in a business which would subject him to the tax; that the transactions on account of which the tax was assessed had taken place, and that the tax had not been paid. With these matters established the defendant would have to "assume the burden of proving any illegality, defect, or ground of non-liability on which he relies to defeat the action. . . . " (61 Cor. Jur., secs. 1401, 1403, pp. 1063, 1065.)

With the aid of section 30 we are satisfied that the certificate of delinquency established, *prima facie,* the essential

proof of the plaintiff's case. That certificate recited that the board had made the assessment under this statute; that it had been made against the defendant by name, giving his address and place of business, and stating period for which the assessment was made, the amounts with penalties and interest, and that the defendant had become indebted in the amounts named, no part of which had been paid. This certificate showed the delinquency of the defendant and the statute by its terms then made the certificate *prima facie* evidence of such delinquency, of the levy of the tax and of compliance by the board with all provisions of the act in relation to the computation and levy of the tax.

It is true that the statute does not provide specifically that the certificate of delinquency shall constitute *prima facie* evidence of the *plaintiff's case;* but it is not essential that those particular words be used so long as words of similar import and equal significance be employed. Section 30 of the act, supplemented by the code sections above cited, was sufficient to constitute the certificate *prima facie* proof of the plaintiff's cause of action and as such sufficient to put the defendant on his proof, if any he had, of any invalidity, irregularity or ineffectiveness of the tax.

The terms of section 30 of the act are as broad and inclusive as those of other statutes having similar provisions and upheld as sufficient to put the defendant to his proof. The numerous statutes to the same effect are not cast in the same mould. The general purpose of all of them, however, is to place the burden on the party attacking the validity of the tax to prove the ineffectiveness of the same, and any statutory provision designed fairly to accomplish that result is sufficient.

Section 49 of the "California Irrigation District Act" (Stats. 1897, p. 254; Deering's Gen. Laws, 1937, Act 3854, p. 1792, at p. 1835), as originally adopted and as still in effect, provides that the assessment-book or delinquent list, certified by the collector, "showing unpaid assessments against any person, or property, is *prima facie* evidence of the assessment, the property assessed, the delinquency, the amount of assessments due and unpaid, and that all the forms of the law in relation to the assessment and levy of such assessments have been complied with". There is nothing in this section which in

terms makes the assessment-book or delinquent list so certified a *prima facie* showing of the plaintiff's *case,* as distinguished from *prima facie proof* of facts sufficient to establish the plaintiff's case. This court said in *Miller & Lux, Inc.,* v. *Secara,* 193 Cal. 755, at page 771 [227 Pac. 171], with reference to the effect of the introduction of an irrigation district assessment-book in evidence on behalf of the defendants: "By so doing the defendants established a *prima facie* case of the validity of the assessment and of the fact that all forms of law in relation to the assessment and levy had been complied with. This showing would not only justify but would compel a finding to this effect unless it was both contradicted and overcome by other evidence in the case".

The laws of this state providing that a delinquent list shall be sufficient to establish a *prima facie* case in an action to enforce the collection of a tax are of early origin. In 1860 the legislature passed an act providing that in an action to collect an *ad valorem* tax the delinquent list, duly certified, should be evidence "to prove the delinquency, property assessed, the amount of taxes due and unpaid, and that all the forms of law in relation to the levy and assessment of such taxes have been complied with." (Stats. 1860, pp. 139, 140.) This provision was under attack in the case of *People* v. *Seymour,* 16 Cal. 332 [76 Am. Dec. 521]. It was held that the terms of the act providing for *prima facie* proof of liability in an action to collect the tax merely affected the remedy, and was not open to any constitutional objection—in effect leaving the defense to show that the defendant was not liable. "Such seems to be the evident design of the act", said the court.

The statute of 1860 was re-enacted in almost identical language in 1872 and incorporated in the Political Code as section 3789. (Amendments to the Codes, 1873, 1874, pp. 149, 150; approved March 24, 1874.) On the 28th day of the same month an act was approved providing for the levy of a tax for state purposes, in the enforcement of which it was provided that the delinquent list, duly certified, "shall be *prima facie* evidence of the validity of the assessment, that the amount therein stated is due, and of every fact necessary to maintain the action." (Stats. 1873, 1874, p. 748, sec. 15.) The early statutes, with their varying phraseologies, were

upheld and applied by this court in numerous cases. (*People* v. *Donnelly,* 58 Cal. 144; *San Francisco* v. *Phelan,* 61 Cal. 617; *Lake County* v. *Sulphur Bank Q. M. Co.,* 66 Cal. 17 [4 Pac. 876]; *Modoc County* v. *Churchill,* 75 Cal. 172 [16 Pac. 771]; *San Gabriel V. L. & W. Co.* v. *Witmer Brothers Co.,* 96 Cal. 623 [29 Pac. 500, 31 Pac. 588, 18 L. R. A. 465].)

Uniformity in language appears in numerous later statutes providing that a certified assessment-book or delinquent list shall constitute *prima facie* evidence. Except for the name of the appropriate board or officer whose duty it is to administer the same, the following statutes contain language identical with the language of section 30 of the act here in question: The Bank and Corporation Franchise Tax Act of 1929 (Stats. 1929, p. 19, sec. 31, as amended, Stats. 1937, p. 2346); the Personal Income Tax Act of 1935 (Stats. 1935, p. 1090, sec. 28); the Use Tax Act of 1935 (Stats. 1935, p. 1297, as amended Stats. 1937, p. 1935 at p. 1944); the Private Car Tax Act of 1937 (Stats. 1937, p. 621 at p. 624); the Corporation Income Tax Act of 1937 (Stats. 1937, p. 2184 at p. 2199). A variation in language but with no change in legal effect is found in the Motor Vehicle Fuel License Tax Act of 1923 (Stats. 1923, p. 571, as amended Stats. 1931, p. 105 at p. 111), and the Highway Carrier's Licensing Law of 1933 (Stats. 1933, p. 928, as amended Stats. 1937, p. 1919 at p. 1930).

Similar provisions of other taxing statutes might be referred to but sufficient examination has been made to indicate beyond question that it has been the intention of the legislature from the early history of the state to make the copy of the assessment-book or delinquent list, duly certified, *prima facie* evidence of the right to enforce payment of the tax or assessment involved, and that when such showing has been made the burden is placed on the defendant to show the extent of any claimed non-liability. There is no reason to accord the language of section 30 of the act here under consideration any significance other than that given the earlier statutes enacted for the same purpose. ■ In fact the term "levy" as used in this statute may well be given a definition in accord with the comprehensive meaning ascribed to it in numerous authorities cited in support of the text in 61 Corpus Juris, at page 551, where it is said that in its proper sense "it is the formal and official action of a legislative body invested with the power of taxation—whether national, state

or local—whereby it determines and declares that a tax of a certain amount, or of a certain percentage or value, shall be imposed on persons and property subject thereto''. In *Moore* v. *Foote*, 32 Miss. 469, 479, it was said: ''The term 'levy' imports . . . the performance of such acts as would authorize the tax collector to proceed to collect the taxes.'' When the statute makes the certificate of delinquency *prima facie* evidence of the ''levy'' as so defined, and also like evidence of compliance by the board with all provisions of the act in relation to the levy and of the delinquency in payment, no more would seem to be required to establish a *prima facie* case.

The defendant advances the argument that since the plaintiff introduced evidence to the effect that the defendant had paid some sales taxes during the period in question, it was incumbent on the state also to prove that the defendant had not paid all the taxes for that period which were properly chargeable against him. The argument seems to be that, assuming the *prima facie* showing of the certificate of delinquency, the plaintiff has destroyed its *prima facie* showing by the additional evidence it produced. The contention cannot be sustained for we are at once confronted with the rule in this state with reference to what evidence may be considered on a motion for a directed verdict. This rule has been repeated so often that a restatement would seem to be unnecessary. A recent case in which it was reiterated is *Engstrom* v. *Auburn Auto Sale Corp.*, 11 Cal. (2d) 64 [77 Pac. (2d) 1059]. Under the rule the evidence conflicting with evidence favorable to the plaintiff must be disregarded. If there remains no evidence of sufficient substantiality to support a verdict the motion may be granted, otherwise not.

The additional evidence produced by the plaintiff consisted first of the testimony of the defendant called under section 2055 of the Code of Civil Procedure. This evidence was not binding on the plaintiff. But on the motion for a directed verdict it would weigh for the plaintiff in so far as it was favorable. In so far as it was unfavorable it would be disregarded. (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529]; *Dempsey* v. *Star House Movers, Inc.*, 2 Cal. App. (2d) 720 [38 Pac. (2d) 825].) The testimony of the defendant showed that he was engaged in the retail business of selling refreshments, confections, tobaccos, etc., across the

street from the plant of the Douglas Aircraft Company in Santa Monica; that the business was run in three units in each of which were one or more cash registers; that those units were run as retail establishments under the name of the defendant and during the period in question with no retail sales permit applicable thereto other than the one issued to the defendant; that the defendant made certain returns to the board and paid the tax in accordance therewith, but that he did not make a return for all of the units nor pay a tax for the operation of all of them. The defendant endeavored to show that he leased certain units on agreements to share the profits, that he was not liable on account of transactions in those uits, and that he had paid all the taxes he was legally bound to pay.

Other evidence on behalf of the plaintiff was to the effect that an auditor of the board had made an extended investigation of the business of the defendant and had submitted his report to the board, including a report based on information obtained from those who were making the sales at defendant's place of business, and from those who had sold merchandise to the defendant for resale at said place of business, all of which tended to prove that the defendant had not made a true and correct return of his transactions to the board.

There was nothing in the evidence produced by the plaintiff which as a matter of law would overthrow the *prima facie* case made by the certificate of delinquency. Whatever evidence was produced by the defendant contrary to the *prima facie* case established by the certificate of delinquency, including any such evidence produced by him when called as a witness under said section 2055, merely created a conflict to be resolved by the jury under appropriate instructions from the court.

The judgment is reversed.

Seawell, J., Langdon, J., Curtis, J., and Spence, J., *pro tem.*, concurred.

Houser, J., dissented.

EDMONDS, J., Concurring.—I concur in the order of reversal, but as I read the record it is unnecessary to consider whether a certificate of delinquency under the Retail Sales

Tax Act is *prima facie* evidence of all of the facts necessary to support a judgment for taxes, and the court may not properly decide that question in the present case.

The evidence before the court at the time the defendant's motion for a directed verdict was granted shows that in 1934 he applied for a permit to operate a cafe. He admitted that he conducted this business for some months after that date. He then bought a near-by lot, which is located across the street from a large industrial plant, and eventually erected three booths or stands upon this property. The defendant admits that for some of the time in controversy he conducted a retail business in one of these units. According to his testimony he sold cigars, tobacco, ice cream, soft drinks and newspapers. In another unit sandwiches and coffee were sold. Apparently the third unit was built much later than the other two and there is scant evidence concerning its use.

The state claimed taxes upon the sales made in the three units for the period from April 1, 1934, to June 30, 1937. In defending this claim Mr. Mahoney contended that he had operated one of the units for a portion of the time and that he had reported and had paid all amounts due it upon the sales made by him. At all other times during the taxable period in controversy, he testified, each of two units had been rented by him upon an agreement that he should be paid a share of the net profits, and, consequently his lessees were solely responsible for taxes due the state upon the sales made by them. However, the application of one of these persons for a permit to conduct a retail business as the successor of the defendant was denied.

Also, in contradiction of the defendant's contentions, the persons to whom he leased the premises and girls who worked in one or the other of the units at different times testified to facts from which the jury might reasonably have inferred that Mr. Mahoney, as alleged by the state, was conducting all of the business being transacted on the lot owned by him. Moreover, all of the units were under one roof and from the description of them by the witnesses, it is difficult to believe that they were more than departments of one business.

Under these circumstances there was sufficient evidence aside from the certificate of delinquency relied upon by the state, to support a judgment against the defendant upon the ground that he was conducting all of the business done in

the three units. Much of this evidence was offered by the state, apparently for the purpose of proving the defendant's ownership of a business in which taxable sales were made. The right of the state to rely entirely upon the certificate to prove the existence of taxable transactions is, therefore, not a question properly before the court upon the record in the present case. However, not only is the judgment reversed upon that ground, but a construction is placed upon the statutory provision with which I cannot agree.

Proceedings under tax statutes are *in invitum* and the statute will be strictly construed in favor of the taxpayer and against the state. (*Barker Bros.* v. *Los Angeles,* 10 Cal. (2d) 603, 608 [76 Pac. (2d) 97]; *Uhl* v. *Badaracco,* 199 Cal. 270 [248 Pac. 917]; *United States* v. *Merriam,* 263 U. S. 179 [44 Sup. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547]; *Gould* v. *Gould,* 245 U. S. 151 [38 Sup. Ct. 53, 62 L. Ed. 211].) In an action to collect taxes the plaintiff must establish every fact essential to his right of recovery. "Any attempt on the part of the state . . . to take the property of an individual for public purposes by way of taxation must find an express statutory warrant, and all laws having this object are to be construed strictly in favor of the individual as against the state. Whether his property is to be taken by seizure or by suit the rule is the same. In the one case the officer must show his warrant for the seizure, and in the other the plaintiff must establish every fact essential to the maintenance of his right of recovery. In either case the proceeding is *in invitum* and no presumption is to be indulged in favor of the right to take the property, or of any intention that is not distinctly expressed in the statute under which it is sought to be taken." (*Merced County* v. *Helm,* 102 Cal. 159, 165 [36 Pac. 399]; see, also, *Estate of Potter,* 188 Cal. 55, 64 [204 Pac. 826].)

Under the statutory construction adopted by my associates, when the Board of Equalization issues a certificate of delinquency the state may sue thereon and rely entirely upon it to establish a cause of action. As against this certificate the defendant may show by the most conclusive evidence that he was not the owner of the business as claimed by the state and that he had no connection with it. Yet the trial judge or a jury may only consider this evidence as contradictory of the *ex parte* certificate of the administrative board and an appellate court would be required to uphold a judgment in favor of the state.

This is contrary to all fundamental principles. The existence of taxable property or taxable transactions is necessary to the validity of a levy and assessment (*Brenner* v. *Los Angeles,* 160 Cal. 72, 76 [116 Pac. 397]), and is a basic and fundamental fact which must be proved when put in issue in any action to collect a tax. This rule was applied in an earlier case where the effect of an assessment affirmed by the Board of Equalization was considered and the court said: "Even a body possessing powers so enormous and in certain instances final jurisdiction, may not validate an assessment upon nonexistent property". (*Kern River Co.* v. *County of Los Angeles,* 164 Cal. 751, 755 [130 Pac. 714].)

Unquestionably the legislature has the power to make official tax records or certificates *prima facie* evidence of a taxing body's right to recover amounts claimed to be delinquent. Such a provision affects only the remedy by shifting the burden of going forward with the evidence to the party who usually has a superior opportunity for knowledge of the facts. However, none of the decisions cited and relied upon in the opinion of my associates hold that evidence concerning the existence of transactions subject to a tax may be dispensed with. The validity of a statute allowing an assessment book or delinquent list, properly certified, showing amounts unpaid upon certain real property, to be offered as *prima facie* evidence of unpaid taxes, is determined by principles entirely different from those which apply to excise taxes. Moreover, all of the statutes which have been upheld by this court contain language much more definite and comprehensive than that used in the Retail Sales Tax Act.