[L. A. No. 20128. In Bank. Dec. 5, 1947.]

THE PEOPLE, Appellant, v. ABE SCHWARTZ et al., Defendants; FRED SCHWARTZ, Respondent.

Fred N. Howser, Attorney General, James E. Sabine and Daniel N. Stevens, Deputy Attorneys General, for Appellant.

Pearlson & Singer and Herbert D. Pearlson for Respondent.

EDMONDS, J.—In the administration of the Retail Sales Act of 1933 (Deering's Gen. Laws, 1939 Supp., Act 8493 [since 1943 codified in the Rev. & Tax. Code as the Sales and Use Tax Law, §§ 6601-7176]), the State Board of Equalization levied a jeopardy assessment upon Fred Schwartz and sued to collect it. The principal question presented for decision upon the appeal by the state concerns the sufficiency of

the evidence to support the judgment in favor of Schwartz.

The complaint alleged that from October 1, 1939, to and including June 30, 1942, Schwartz was a copartner with Abe Schwartz. Doing business under the name of Central Tire Company, they sold at retail tangible personal property. Quarterly returns were filed with the State Board of Equalization for that period. Being dissatisfied with the returns filed, and upon information in its possession, the board levied a jeopardy assessment which, with interest and penalties at the date of filing the complaint, amounted to $1,435.51.

By answer, Schwartz denied generally these allegations and pleaded an affirmative defense which, upon motion, was stricken out.

At the time the action came on for trial, it was stipulated that Schwartz was a partner in Central Tire Company. Counsel for the state thereupon offered in evidence the certificate of delinquency of the State Board of Equalization, pursuant to section 6714 of the Revenue and Taxation Code, certifying to his liability for the amount assessed. The state then rested.

Schwartz testified that, as a partner in the tire business, he filed sales tax returns with the State Board of Equalization. He stated that upon the board's audit of the books of the company, he was asked to explain why his bank deposits amounted to more than the gross receipts from his sales as recorded in his sales journal. According to the testimony of Schwartz, he told the auditor that merchandise for the business was principally obtained from various municipal, county, state and federal agencies; that the goods were sold on a competitive bid basis and it was necessary to forward with the bid a deposit as evidence of good faith. In some cases, his firm did not obtain the tires for which its bid was made and the deposit was returned. These refunds were redeposited in the bank account of the company. Upon this explanation, said Schwartz, the auditor gave a credit of $15,000 upon the total amount of gross receipts.

Schwartz also testified that, customarily, before making trips to purchase tires, he withdrew cash from the bank account. Upon his return, he redeposited the amount which had not been paid for merchandise. Defendant's Exhibit "A," consisting of a list of United States Treasury refund vouchers issued on account of unsuccessful bids, was admitted in evidence, and Schwartz testified that the amounts shown

upon it were deposited in the firm's bank account. Defendant's Exhibit "B" is the record purporting to show the operations of the tire company and Schwartz testified that the data for the sales tax reports were taken from the sales journal, which is a part of this record.

By way of impeachment, upon cross-examination, Schwartz admitted that, on a plea of *nolo contendere,* he had been convicted in the federal district court of making false and fraudulent statements in applications to the Office of Price Administration, a felony.

The only other person to testify was the auditor of the board, who was called by Schwartz. The witness stated that the audit disclosed disbursements in a greater amount than is shown by the taxpayer's reports as gross receipts from sales. He also declared that "the difference between the amount of sales reported and the amounts disbursed by cash and by check was deemed to be additional taxable sales since no proof was offered of any other source of income."

The auditor's testimony was that for 1941, the cash receipts journal showed a total of $1,328.86 as refunds upon bids but that he could not determine from any available records whether the money was redeposited in the bank account. He explained that he checked the individual items which Schwartz had told him represented amounts redeposited in the bank account, but "could not find one place that they had been redeposited and not shown as receipts and so there was no proof." Accordingly, the auditor concluded, to determine the additional taxable gross receipts not reported by Schwartz, he totaled the amounts disbursed by check and cash, as shown by the books, and deducted from this amount the total of recorded cash receipts. To this net figure, the savings account deposits of the taxpayer, otherwise unaccounted for, were added.

From this computation, it was determined that Schwartz had understated the taxable gross receipts for the period in controversy by $37,427.11. Credit for resales, and labor understated, reduced this amount to $37,288.01, which is the basis of the additional levy.

The judgment for Schwartz rests primarily upon the court's finding that "the method employed by said Board in auditing the books and records of the [defendant] . . . did not disclose that said [defendant] . . . made any sales, the gross receipts of which were not included in the amounts

reported in the Sales Tax Returns filed by the taxpayer. . . ." Challenging this judgment, the state contends that it is not supported by the evidence and that the certificate of delinquency established the liability of Schwartz and the amount of the indebtedness. It asks that the judgment be reversed with directions to enter judgment against Schwartz. The taxpayer asserts that the certificate of delinquency is but prima facie evidence of the levy of the tax and does not prove that he is liable for the amount claimed to be due. He characterizes the method used in computing the gross receipts as unfair and uncertain and insists that the evidence clearly supports the judgment in his favor.

More specifically, Schwartz complains of the method used by the board in computing the deficiency assessment because it "did not take into consideration the cash on hand, or the stock on hand at the beginning and close of the audit period." He argues that if the taxpayer had cash on hand at the beginning of the tax period, it should be taken into consideration in the audit procedure and might account for some of the difference between receipts and disbursements. However, there is no indication in the record that such was the fact, and Schwartz has never claimed, nor attempted to show by his records, that on October 1, 1939, there was cash on hand which would account for the difference between receipts and disbursements.

The certificate of delinquency carries with it the presumption that the assessment of the board is correct. (*People* v. *Mahoney*, 13 Cal.2d 729 [91 P.2d 1029]; Rev. & Tax. Code, § 6714.) The decision in the Mahoney case holding that the certificate of delinquency establishes, prima facie, the essential proof of the state's case was based upon the interpretation of section 30 of the Retail Sales Act of 1933, *supra*. In 1941, section 30, with some change in language, was codified as section 6714 of the Revenue and Taxation Code. Section 30 declared that "a certificate by the Board showing the delinquency shall be prima facie evidence of the levy of the tax." As reenacted, it provides that the certificate "shall be prima facie evidence of the determination of the tax." The substitution of the word "determination" for "levy" has not, as is claimed by the taxpayer, changed the meaning of the section to reduce the scope of proof attributable to the certificate of delinquency. In the codification of section 26 of the statute, which enumerated the required recitals of the

certificate of delinquency, the word "determination" was likewise substituted for the word "levy." (Rev. & Tax. Code, § 6757.) The enactment now provides that the certificate shall specify "the amount, interest, and penalty due, the name and address as it appears on the records of the board of the person liable for the same, and the fact that the board has complied with all provisions of this part in the determination of the amount required to be paid." It is the statement of these facts in the certificate which constitutes prima facie proof of the taxpayer's liability for the amount found to be due.

■ There is nothing inherently incorrect in the method used by the auditor of the board in determining the deficiency. The taxpayer's records disclose that, during the period in question, he received in cash from sales (or otherwise accounted for and adjusted) an amount substantially smaller than he had paid out in cash and by check. In the absence of explanation by the taxpayer, and accepting his statement that the partnership had no income except from sales, it reasonably may be concluded that the total of money received, after giving credits as mentioned, is the amount of the additional taxable sales. Contrary to the taxpayer's contention, inventory at the beginning and close of the taxable period has no connection with the computation to show taxable retail sales. The disbursements reflect the additions to inventory, just as the cash receipts reflect the disposal of stock on hand. The auditor for the board was concerned only with the amount of retail sales and not the purposes for which disbursements were made.

■ Sections 7051-7054, Revenue and Taxation Code, require all retailers to keep records and authorize the board to examine the books and records to verify the accuracy of the returns. The state is not bound to accept the statements of the taxpayer, unsupported by any record, which are contrary to entries in his books of transactions pointing to a larger sum as the true total. ■ Schwartz has the burden of proving not only that the board's determination, based upon his records, is incorrect, but also of producing evidence from which another and proper determination may be made. (See Rev. & Tax. Code, §§ 6091, 6714.) Moreover, the "certificate showed the delinquency of the defendant and the statute by its terms then made the certificate *prima facie* evidence of such delinquency, of the levy of the tax and of

compliance by the board with all provisions of the act in relation to the computation and levy of the tax." (*People* v. *Mahoney, supra,* p. 733.)

The evidence presented by Schwartz did not negative the fact that, as shown by the audit, his disbursements by check and by cash, as taken from his records, exceeded his reported gross receipts from sales. His explanation of the difference was that it represents the redeposit of amounts previously withdrawn from the bank account. But the total amount of the refund vouchers is $1,800.59. Of this amount, $772.19 appears in the cash receipts journal; it is, therefore, not a part of the more than $37,000 which constitutes the excess of disbursements over receipts. Giving the testimony of Schwartz and the documentary evidence full credence, the discrepancy has been explained or accounted for only in the amount of $1,028.40. True, he declared that upon his return from buying trips, the money not utilized for purchases was deposited in the bank. He also stated that all of these amounts were not entered in his books. However, he made no attempt to show the number of such trips, the actual or estimated amount of purchases made by him or the amount of redeposits not shown in the cash receipts journal.

In his examination of the board's auditor, Schwartz questioned him as to certain items in the check register which were amounts claimed to have been paid out as bid deposits, or loans to individuals subsequently refunded or repaid and redeposited. Some of these items are duplicates of these shown in defendant's Exhibit "A" and others are reflected in the cash receipts journal. But the total of them is less than $15,000, and if the trial judge determined that this proof was sufficient to account, to that extent, for the discrepancy relied upon by state, and he also allowed the amount of the refund vouchers, there still remains about $12,000 unaccounted for.

Under these circumstances, the evidence does not support the findings and judgment. The Revenue and Taxation Code provides that "to prevent evasion of the sales tax it shall be presumed that all gross receipts are subject to the tax until the contrary is established." (§ 6091.) If Schwartz had records to show that there were redeposits, other than those which he mentioned, which were not entered in his books, it was his duty to present that evidence. If

he had no such records, he has failed to overcome the presumption created by the statute in favor of the state (See *Rathjen Bros. v. Collins,* 50 Cal.App.2d 765, 772-773 [123 P.2d 925].) His testimony is not a substitute for the records required by statute and does not overcome the presumptively correct assessment of the state which is based upon the taxpayer's records.

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.