[Civ. No. 11911. First Dist., Div. One. Mar. 27, 1942.]

RATHJEN BROS., INC. (a Corporation), Respondent, v. R. E. COLLINS, as a Member of the State Board of Equalization, et al., Appellants.

Earl Warren, Attorney General, and J. Albert Hutchinson, Deputy Attorney General, for Appellants.

Sefton & Quattrin for Respondent.

PETERS, P. J.—This action was brought by Rathjen Bros., Inc. to recover deficiency excise taxes collected by the State Board of Equalization under the Alcoholic Beverage Control Act (Stats. of 1935, p. 1123, ch. 330) as amended in 1937 (Stats. of 1937, p. 2126, ch. 758). The plaintiff is a duly licensed distilled spirits rectifier and distributor engaged in business in California, and, as such, for the tax period commencing July 1, 1937, and ending June 30, 1938, paid to the state large sums of money under the tax statute here involved. The State Board of Equalization, pursuant to the authority conferred by the act, levied a deficiency assessment against plaintiff for that period. After a hearing, and after deducting from the original deficiency assessment a loss tolerance to which the taxpayer was entitled, the board determined there was a deficiency owing the state of $1,083.39. This sum was paid by the taxpayer under protest and this action instituted to recover the amount so paid. The trial court rendered judgment for the taxpayer, and the defendants appeal.

The act under which these taxes were paid was passed in 1935, and materially amended in 1937. The 1937 amendments are admittedly applicable to this proceeding. Generally speaking, the act imposes a stamp tax, the stamps to be purchased by the wholesaler or rectifier, and such stamps must accompany delivery of the distilled spirits to the retailer, by whom they are affixed to the bottles and canceled.

The appellants contend that regardless of the other contentions made, the decision in *Empire Vintage Co.* v. *Collins*, 40 Cal. App. (2d) 612 [105 Pac. (2d) 391], decided by the First Appellate District, Division Two, requires a reversal. The Supreme Court denied a hearing in that case, three of the justices voting for a hearing, and two of the justices not participating. The same tax statute as that involved in the instant case was involved in the Empire Vintage Co. case, but the period in dispute was for the period July 1, 1935, to June 30, 1937. The action in the Empire Vintage Co. case, as in the instant case, was brought to recover a deficiency paid under protest by the wholesaler. On pleadings and evidence substantially similar to those here involved, the trial court rendered its judgment in favor of the taxpayer. The appellate court reversed this judgment on the sole ground that the findings did not support the judgment. The findings in that case were to the effect that the wholesaler there involved had

made no sales to on- or off-sale licensees which were not tax paid. The appellate court properly held that this finding did not negative unlawful sales having been made to those who were not licensees, and, upon which unlawful sales, taxes had not been paid; that, although the wholesaler could lawfully sell only to licensees, the taxpayer could not recover a tax collected by the state on unlawful sales to non-licensees. The court also held that the findings did not negative sales having been made which were not shown on the books of the taxpayer. It is to be noted that the court did not hold that in fact unlawful sales had been made to non-licensees which were not tax paid, but simply passed upon the sufficiency of the findings to support a judgment of recovery. The exact holding of the court in that case is disclosed in the following quotation (40 Cal. App. (2d) at p. 619): ''The other findings are to the effect that the plaintiff had paid its taxes on those sales to on-sale and off-sale licensees. There is no finding that other sales, whether legal or not, were not made or that the tax had been paid thereon. But to support a judgment in favor of the plaintiff it is obvious the findings of the court should clearly show that the plaintiff, for the period July 1, 1935, to June 30, 1937, had paid taxes on all sales, legal or illegal, and that the defendants arbitrarily compelled it to pay the amount sued for. The findings do not make that showing.''

In their closing brief the appellants urge that this decision compels a reversal of the judgment in the instant case for the asserted reason that the findings in the two cases are ''identical.'' An examination of the records in the two cases demonstrates that the findings are not only not identical, but that in the instant case there is a positive finding on the very issue that the court failed to find on in the Empire Vintage Co. case. The complaint in the present case, as in the Empire Vintage Co. case, contained in paragraph VII, this allegation:

''That plaintiff above named at all times complied with and performed the provisions of the said Alcoholic Beverage Control Act as the same was then in force and effect, and purchased and delivered as required therein Excise Stamps on all sales made by it upon which the said Excise Tax was imposed.'' In the Empire Vintage Co. case there was no finding of the truth of this allegation, but in the instant case the court found that this allegation was true. It should be mentioned that in the opinion in the Empire Vintage Co. case there

are two obvious typographical errors. After correctly setting forth the allegations of the complaint the court stated, on page 616: "The trial court found that all the allegations of the complaint contained in paragraphs I, II, III, IV, V, and VII are true . . ." An examination of the clerk's transcript in that case shows that the "VII" should have read "VIII." That there was no finding of the truth of paragraph VII is correctly stated on page 618 of the decision. On the same page appears the statement that: "In paragraph VII the plaintiff alleged that the defendant board caused an examination to be made of plaintiff's books and records . . ." The correct reference is to paragraph VIII. The major premise of the court's opinion in the Empire Vintage Co. case was that there was no finding that the taxpayer had paid all taxes due—but simply a finding that such taxes had been paid on all sales to licensees. It was for that reason alone that the judgment was reversed. But the very finding that was lacking in that case was made in the instant case. For this reason, the argument that the prior decision compels a reversal is without merit.

The appellants next urge that the evidence does not support the findings. This contention, with which we agree, requires a reference to some of the provisions of the act as originally enacted, and as amended in 1937. Section 24, as amended in 1937, provides that "An excise tax is hereby imposed upon all distilled spirits sold in this State by rectifiers or wholesalers" in amounts as therein fixed. The tax is a stamp tax (§ 33). Section 27, as amended in 1937, gives the state authority to levy a deficiency assessment where an examination of the books of the taxpayer shows that stamps purchased by wholesalers or rectifiers are not sufficient to pay the tax on spirits sold by him. Section 24.2 was added to the act in 1937. So far as pertinent here, that section provides: "It shall be presumed that all distilled spirits acquired by any rectifier or distilled spirits wholesaler have been sold in this State by such rectifier or wholesaler unless proven to the satisfaction of the board, in verified reports on forms prescribed by the board, that such distilled spirits are [here follows a list of nontaxable disposals]." The proper application of this last-quoted section presents the basic problem on this appeal.

In determining the deficiency due from respondent, the

state followed the following procedure: The auditor first determined from an examination of the books of respondent the quantity of distilled spirits possessed and acquired by it during the tax period. This totaled 103,210.48 gallons. This figure is not disputed by respondent. It then determined from such books the quantity of distilled spirits on hand at the close of the tax period and those disposed of in nontaxable transactions, amounting to 5,971.46 gallons. This figure is not challenged by respondent. The remainder of 97,239.02 gallons was adopted by the state as the figure for taxable sales. The tax on that many gallons is admittedly $77,791.22. The books of respondent showed that it possessed and acquired during the tax period stamps in the amount of $77,691.62; that stamps on hand at the close of the period, stamps returned to the board, etc., were of the value of $1,061.58. Deducting that amount from the value of the stamps acquired by respondent during the period results in the figure of $76,630.04—the amount of stamps applicable to the sale of 97,239.02 gallons on which a tax of $77,791.22 should have been paid. None of these figures are challenged by respondent. These figures obviously leave $1,161.18 as the amount of the deficiency. The board thereafter made a loss tolerance allowance of $77.79, which reduced the amount of the deficiency to $1,083.39. This was the amount assessed against respondent, and the amount for which recovery was allowed to it by the present judgment after the taxpayer had paid that amount under protest.

The above figures apply only to the Oakland office of respondent. The respondent also operates a San Francisco office, but except in one particular hereafter mentioned, the tax on sales from that office is not here involved. It will be noted that the quantity of distilled spirits sold, and the amount of the tax due thereon, were determined by the board by deducting from the spirits possessed at the beginning of the tax period and acquired during the period, the quantity on hand at the close of the period and the quantity disposed of in nontaxable transactions. That is in exact accord with the provisions of section 24.2 above-quoted. Under that section, the figure so computed is presumed to represent the amount of taxable sales.

In spite of the fact that the board followed precisely the procedure outlined by section 24.2, the respondent urges that the deficiency assessed against it was not levied in the man-

ner provided by the act. Throughout respondent's argument runs the statement that the board failed to examine respondent's books to determine the amount of taxable sales shown therein. It is urged that without that figure the tax could not be computed. It is contended that under the provisions of section 27 of the act, as amended in 1937, the tax can only be computed by adding up the sales made as disclosed by the taxpayer's books. The portion of the section relied upon reads as follows: ''If, after giving effect to the provisions of section 24.2, any examinations or investigations made by the board shall disclose that the amount of excise stamps purchased from the board by any rectifier or wholesaler is not sufficient to represent payment of the excise tax imposed upon the sale of distilled spirits sold by such rectifier or wholesaler, the board shall have the power, and is hereby authorized, to make a levy against such rectifier or wholesaler in the amount of the deficiency in the payment of the distilled spirits excise tax so disclosed.''

It will be noted that the board in computing the deficiency did not examine those of respondent's books which constituted the record of sales made. It determined the amount of sales made by first ascertaining the quantity of liquor possessed and acquired during the taxable period, and deducting from that figure the amount of liquor then on hand and the amount shown by the books to have been disposed of in nontaxable transactions. This figure—97,239.02 gallons—rather than a figure taken from sales records, was adopted by the board as the quantity sold and subject to tax. It is to be noted that the taxpayer in this action to recover the deficiency did not produce its sales records. It simply relied on its point that the board, by not examining the records of actual sales, did not·follow the procedure required by the act. The obvious answer to respondent's argument is that the portion of section 27 above-quoted and relied upon by it does not prescribe the manner in which total sales taxable shall be ascertained. The only section that refers to that matter is section 24.2, and that section creates a presumption which applies when the procedure here adopted has been followed, and in the absence of controverting evidence. Respondent, in its argument, simply disregards the presumption created by that section. The presumption is based on common sense. If, from the total gallonage possessed or acquired during the taxable year, there is

deducted the gallonage on hand at the close thereof, plus the gallonage disposed of in nontaxable sales, plus a reasonable loss tolerance, the resulting figure is presumptively the gallonage disposed of in taxable sales. If, as here, there is a large quantity of liquor unaccounted for it is up to the wholesaler to show that it was disposed of in nontaxable transactions. But, unless he does so, the board has established a prima facie case as to the gallonage disposed of in taxable transactions.

It, therefore, follows that the procedure adopted by the board in computing the deficiency was in exact compliance with the statute. The only other question necessary to discuss is whether the respondent in this action has produced other evidence sufficient to rebut the presumption, and sufficient to show that the figure for taxable sales arrived at by the board was wrong. Stated another way, is there any evidence in the record to sustain the finding of the trial court that this taxpayer "purchased and delivered . . . Excise Stamps on all sales made by it upon which the . . . Excise Tax was imposed"? In determining this issue it must be kept in mind that the board followed the procedure set forth in the act, and that under the express terms of the act when that procedure is followed it is presumed the resulting figure correctly shows the gallonage disposed of in taxable sales. There can be no doubt that in view of the presumption created by section 24.2 of the act the burden is on the taxpayer to show why the figure arrived at through application of such presumption is not correct. The taxpayer, in trying to prove his case, did not offer any evidence to challenge the board's audit. It admitted that it had on hand during the taxable year the gallonage as fixed by the board; it admitted that the gallonage it had on hand at the close of the taxable year had been properly computed; it admitted that the quantity sold in nontaxable sales had been deducted and that a loss tolerance had been allowed, but contended that the resulting figure did not represent taxable sales. There was a certain gallonage not now in its possession that was unaccounted for in the invoices of sales to on- and off-sale licensees. The position it took was that the board had to prove what became of that unaccounted for gallonage. It did not offer any evidence as to what had become of that gallonage. It completely disregarded the presumption created by section 24.2 of the act. The real question is, who must prove what happened to the gallonage not accounted

for? Obviously, under section 24.2 the taxpayer must do so. The taxpayer did not do so. It simply offered the testimony of its employees Hammerly and Pingree, persons in managerial positions in its business, to the effect that all deliveries to *licensees* were accompanied by stamps. For example, Mr. Hammerly was asked: "Now, during that period, did you buy sufficient stamps from the State Board of Equalization to cover all the shipments and sales to on- or off-sale distilled spirit licensees?" Over the defendants' objections that the question was incompetent, called for a conclusion, and that no proper foundation had been laid, the witness was permitted to answer, "Yes." The same witness was asked: "To your knowledge have any distilled spirits left the premises of the San Francisco Branch to on- or off-sale distilled spirits retail licensees without the stamps going along, to stamp the merchandise?" Upon defendants' objection being overruled, the witness answered: "No, sir, not to my knowledge." Similarly, the witness Pingree, after first testifying that there was, according to the board's audit, an unaccounted for loss as computed by the board, was asked: "Was any merchandise represented by that amount sold or delivered to on- or off-sale retail distilled spirits licensees?" and over objection answered: "To my own knowledge, no." Both witnesses admittedly did not personally observe all liquor sale shipments that left the company's premises, and could not testify from personal observation of the facts. It is very doubtful whether such oral testimony was admissible at all to prove the ultimate fact in issue. The foundation was not laid for such testimony, and obviously it constituted nothing more than the conclusion of the witness. Moreover, even if admissible, such testimony merely tended to show that on all sales to *licensees* the shipped liquor was accompanied by stamps. It did not prove what had happened to the liquor unaccounted for, or even that on *all* sales stamps were delivered. It may be that some of the sales were made to non-licensees. The Empire Vintage Co. case, *supra,* properly held that the state may collect the tax on sales which are unlawful—i. e., made to non-licensees, as well as on lawful sales made to licensees. The burden was on the taxpayer to show that the deficiency computed by the board in exact accordance with the act was not correct. To do this, it would have to show what became of this unaccounted for liquor. It had full and complete books. If those books

showed what became of the liquor it was the taxpayer's duty to present that evidence. If the books did not show what had become of that liquor, and there was no other evidence available on that point, it would appear that the taxpayer has no evidence to sustain its claim for a refund. The respondent simply failed to prove that it was not liable for the deficiency assessment, or that such deficiency had not been properly computed. The basic finding that the tax had been paid on all sales is unsupported by the evidence.

The respondent contends that as against the deficiency assessed against its Oakland office it is entitled to a credit of $273.04, which is the amount the board's auditor found that the San Francisco office had overpurchased stamps. All of the facts concerning this alleged overpayment do not appear in the record. Whether this sum was credited to the taxpayer is not entirely clear from the evidence. Separate board auditors examined the books of each office. They testified that they compared their analyses and reconciled the same. At any rate, inasmuch as the judgment must be reversed for reasons already set forth, this matter of the San Francisco overpayment is a matter that may properly be examined into on the new trial.

The judgment appealed from is reversed.

Knight, J., and Ward, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 25, 1942. Gibson, C. J., and Traynor, J., did not participate therein. Spence, J., acted pro tem.