[Civ. No. 7756.   Third Dist.   August 10, 1950.]

ARTHUR L. MAGANINI, Appellant, v. JAMES H. QUINN et al., Respondents.

G. MERRITT et al., Appellants, v. JAMES H. QUINN et al., Respondents.

J. Elwood Andresen for Appellants.

Fred N. Howser, Attorney General, and Irving H. Perluss, Deputy Attorney General, for Respondents.

SPARKS, J. pro tem.—Two separate actions were brought to recover deficiency assessments of retail sales tax paid under protest by plaintiffs, and levied by defendants as members of the State Board of Equalization. The factual situations of the cases being similar, a stipulation was entered into at the trial that evidence would be presented only in the action in which Arthur L. Maganini was plaintiff, and that the decision of the court rendered therein would apply to both cases. The trial then proceeded before the court sitting without a jury, and the decision being in favor of defendants and against plaintiffs, judgments were thereupon entered. Appeal is now taken jointly from both judgments.

Appellant Maganini owned and operated a tavern known as the "Fairfax Buffet" located in Oakland, California. The business conducted therein consisted mainly of the sale of distilled spirits, beer, wine and soda by the drink, although some tobaccos, candy and food were also sold. In the operation of the tavern appellant had three employees and was not himself personally present at all times during business hours.

Record of sales was made by means of a cash register, unequipped with a tape.

The taxable period involved was from October 1, 1943, to September 30, 1946, during which appellant filed quarterly returns of the gross sales of his business, the aggregate amount being the sum of $109,234.90. Taxes in the sum of $2,725.18 were paid thereon. In December of 1946 respondents sent an auditor to examine the sales tax returns, books and records of appellant. After an examination of these documents it was discovered that a discrepancy existed between the amount of merchandise purchased by appellant and the gross amount of sales reported by him. The deficiency was calculated and an additional sum of $439.05 of sales tax and interest was assessed against him. A petition for redetermination was then filed by appellant, and thereupon a second and more detailed audit was made of the tavern's operations. As a result of this reaudit a revised deficiency determination, based upon unreported sales in the amount of $30,958.16, was asserted against said appellant. Additional tax plus interest in the total sum of $915.13 was assessed, which is the amount paid under protest by appellant, and which is sought to be recovered.

Appellant's principal contentions on appeal are that in assessing an additional tax against him respondents disregarded his books of account, without impeaching them and employed a formula based upon a markup arbitrarily applied; also, that respondents substituted an estimate of what appellant's gross retail sales should have been in the place of sales tax returns as filed by him.

The tax imposed by the Sales and Use Tax Law (Rev. & Tax. Code, §§ 6001-7176) is self-assessed in the sense that all retailers are required to keep records of their sales and file quarterly tax returns in such form as may be prescribed by the State Board of Equalization. Such returns are required to show the gross receipts of the seller and the amount of the tax for the period. In this connection section 7053 of the Revenue and Taxation Code provides:

"Every seller, every retailer as defined in subdivision (b) of Section 6015, and every person storing, using, or otherwise consuming in this State tangible personal property purchased from a retailer shall keep such records, receipts, invoices, and other pertinent papers in such form as the board may require."

Supplementing this section are Sales and Use Tax Regula-

tions, codified in subchapter 4 of title 18 of the California Administrative Code, as follows:

Section 2098: "Every seller, retailer and person storing, using or otherwise consuming in this State tangible personal property purchased from a retailer, shall keep until the board in writing authorizes their destruction, adequate and complete records showing:

"(a) The gross receipts from the sales af tangible personal property (including any services that are a part of the sale) made within California irrespective of whether the seller regards the receipts as taxable or nontaxable.

"(b) All deductions allowed by law and claimed in filing returns.

"(c) Total purchase price of all tangible personal property purchased for sale or consumption in California.

"These records must include the normal books of account ordinarily maintained by the average prudent business man engaged in the activity in question, *together with all bills, receipts, invoices, cash register tapes, or other documents of original entry supporting the entries in the books of account* as well as all schedules or working papers used in connection with the preparation of tax returns. (Emphasis added.)

"Failure to maintain such records will be considered evidence of negligence or intent to evade the tax, and will result in the imposition of appropriate penalties."

Authority to verify the accuracy of any sales tax return is given in section 7054 of the Revenue and Taxation Code which provides:

"The board or any person authorized in writing by it may examine the books, papers, records, and equipment of any person selling tangible personal property and any person liable for the use tax and may investigate the character of the business of the person in order to verify the accuracy of any return made, or, if no return is made by the person, to ascertain and determine the amount required to be paid."

The statute further provides, section 6481:

"If the board is not satisfied with the return or returns of the tax or the amount of tax required to be paid to the State by any person, it may compute and determine the amount required to be paid upon the basis of the facts contained in the return or returns *or upon the basis of any information within its possession or that may come into its possession.* One or more deficiency determinations may be made of the

amount due for one or for more than one period." (Emphasis added.)

As noted above, respondents caused two audits to be made of the business transacted at the Fairfax Buffet. The first or preliminary audit of December, 1946, was conducted substantially as follows: An examination was made of appellant's records in order to determine the average rates of markup on costs as reflected by the reported sales on returns filed by appellant. The average rates of markups so determined were as follows: 1944—100 per cent; 1945—135 per cent; 1946—260 per cent. Respondent's auditor thereupon applied to appellant's cost of goods, sold for the taxable periods of 1944 and 1945, the average normal markup used by like businesses in the community. These were as follows: Distilled spirits—200 per cent; Beer—90 per cent; Soda—200 per cent; Tobacco and candy—25 per cent; Food—100 per cent. A computation of tax was then made, based upon the average normal markups as applied to appellant's sales, and in this manner it was determined that appellant owed $439.05 in additional sales tax and interest.

The second audit, ordered after appellant had filed his petition for a redetermination, was not only a more detailed and comprehensive investigation, but was conducted by an entirely different method. No reference to, or comparison with, the average normal markups used by like businesses in the community was made. On the contrary, a detailed investigation was made of appellant's records in order to determine the *quantity* of stock purchased and disposed of by appellant during the period. Then, in the case of beverages, the sale of which constituted the bulk of appellant's business, a computation was made of the number of individual drinks which the total quantity of inventory would yield, less a tolerance for spillage. To the aggregate thus obtained were applied the prices charged by appellant for the drinks, and in this manner a markup or percentage of increase of selling price over cost calculated.

The trial court's finding of fact as to the second audit was that respondent's auditor "made a detailed audit and analysis of plaintiff's inventory records, purchase invoices and selling price schedules; that from such records, he determined the brand of distilled spirits purchased; the cases and bottles which were inventoried; the total ounces contained therein; after allowing eight per cent for spillage, the ounces available for sale; that seven-eighth ounce drinks were served

and sold; and that he applied the established price charged for each drink of each brand to the inventory sold, thereby determining the mark-up on distilled spirits sold for the periods herein involved; that similar procedures were followed to ascertain the mark-up on wine and beer.''

This method of testing the accuracy and completeness of appellant's journal entries of gross sales, and of determining a deficiency, is essentially the same type of audit which was under consideration in *Rathjen Bros.* v. *Collins,* 50 Cal.App.2d 765 [123 P.2d 925]. In that case the Board of Equalization computed a deficiency in excise tax upon distilled spirits under the provisions of the Alcoholic Beverage Control Act. The record of sales as disclosed by the books of the wholesaler was not accepted by the board. Instead, the amount of sales was determined by ascertaining the *quantity* of liquor purchased and acquired during the taxable period, and then by deducting from that figure the amount of liquor then on hand and the amount shown by the books to have been disposed of in nontaxable transactions. This figure, in gallons, rather than a figure taken from sales records, was adopted by the board as the quantity sold and subject to tax.

In the Alcoholic Beverage Control Act there is a provision that distilled spirits acquired by a rectifier shall be presumed to have been sold in this state. (Deering's Gen. Laws, Act 3796, § 24.2.) Commenting on this presumption, the court in *Rathjen Bros.* v. *Collins, supra,* said on pages 770-771:

''The presumption is based on common sense. If, from the total gallonage possessed or acquired during the taxable year, there is deducted the gallonage on hand at the close thereof, plus the gallonage disposed of in nontaxable sales, plus a reasonable loss tolerance, the resulting figure is presumptively the gallonage disposed of in taxable sales. If, as here, there is a large quantity of liquor unaccounted for it is up to the wholesaler to show that it was disposed of in nontaxable transactions. But, unless he does so, the board has established a prima facie case as to the gallonage disposed of in taxable transactions.''

A presumption is of course merely a deduction which the law directs to be made from particular facts, and unless declared by law to be conclusive, may be controverted by other evidence, direct or indirect. Consequently, in the Rathjen case, *supra,* the rectifier was privileged to introduce evidence rebutting the presumption created by section 24.2 of the act. In this connection it is noteworthy to observe that in

that case the presumption was not deemed to have been overcome by the introduction into evidence of the taxpayer's books of account showing the amount of their gross sales.

From the foregoing, we conclude that respondents here did not exceed their authority in the manner in which their second audit was conducted and the deficiency determined. The code sections hereinbefore quoted clearly contemplate an examination "behind the books," so to speak, in which original records, such as purchase invoices, sales slips, cash register tapes, and inventory records may be audited and analyzed. There is no requirement that such audit be restricted to pointing out falsifications, errors or omissions, if any, in the books of account themselves.

We further conclude that there was nothing inherently incorrect in the manner in which the audit was conducted. It was predicated in the main upon facts and figures obtained from appellant's own records, and from information as to the manner in which his business had been conducted. No pre-adopted percentage of proceeds over costs was applied, and those portions of the audit which were of necessity dependent upon estimate, such as the eight per cent tolerance for spillage, were, if not correct, subject to be controverted by appellant.

In the case of *People* v. *Schwartz*, 31 Cal.2d 59 [187 P.2d 12], our Supreme Court had under consideration the precise question presented here, namely, the authority of the Board of Equalization to bypass a taxpayer's record of gross sales and to make a deficiency determination of sales tax in derogation thereof. The method used was as follows: An examination was made of the retailer's bank deposits and cash disbursements, and finding that they substantially exceeded the gross receipts from sales reported by the taxpayer, the latter was called upon to explain the excess. The court said on page 64:

"The taxpayer's records disclose that, during the period in question, he received in cash from sales (or otherwise accounted for and adjusted) an amount substantially smaller than he had paid out in cash and by check. In the absence of explanation by the taxpayer, and accepting his statement that the partnership had no income except from sales, it reasonably may be concluded that the total of money received, after giving credits as mentioned, is the amount of the additional taxable sales."

Appellant seeks to distinguish the holding in *People* v. *Schwartz* on the ground that the Board of Equalization there had executed a certificate of tax delinquency. ██ It is true,

that when an action is brought by the board a certificate by the board showing the delinquency is declared by the statute to be prima facie evidence of certain facts, namely, of the determination of the tax or the amount of the tax; of the delinquency of the amount set forth; and of the compliance by the board with the provisions of law in relation to the computation and determination of the amounts. (Rev. & Tax. Code, § 6714.) However, when the action is brought by the taxpayer for the recovery of sales tax paid under protest, the use of the certificate of delinquency as a defense to the action is not authorized. In such case it is incumbent upon the taxpayer affirmatively to establish his right to recover, and when contrary evidence is introduced, he must do so by a preponderance of the evidence. On the other hand, when the action is instituted by the board the introduction of its certificate of delinquency merely eliminates the necessity of preliminary proof. ■ The words "prima facie" mean literally, "at first view," and a prima facie case is one which is received or continues until the contrary is shown and can be overthrown only by rebutting evidence adduced on the other side. (*Frank Meline Co.* v. *Kleinberger*, 108 Cal.App. 60 [290 P. 1042].)

The record shows here that appellant produced his books of account with testimony that the entries therein were without error or omission. He then rested his case. Respondents thereupon proceeded in defense, and introduced evidence of its audits, the method followed in going behind the book entries of gross sales, and the resultant determination of the deficiency assessment. Appellant then introduced some rebuttal testimony and the case was submitted to the court.

■ There being a discrepancy between the amount of gross sales as shown by appellant's books of account and that determined by respondents' audit, a conflict in evidence obviously resulted. The fundamental issue thereof was whether or not the full, true and correct amount of appellant's sales had been entered in his journal, and reported on the quarterly returns. On the one side there was the testimony of appellant and of his accountant as to the correctness of the sales entries, unsupported, however, by cash register tape, or other documentary evidence of sales. When asked how he verified the sales, appellant's accountant testified, "There is no way of verifying sales except the veracity of the man with whom I am doing business."

On the other side of the issue there was the audit conducted

by respondents in the manner hereinbefore described and which revealed unreported sales in the amount of $30,958.16.

It is of course not the province of this court to pass on the weight of the evidence, the credibility of the witnesses, or to determine which side of an issue has the more convincing force. These are matters entirely for the trier of facts. (*Rice* v. *California Lutheran Hospital,* 27 Cal.2d 296 [163 P.2d 860] ; *Peri* v. *Los Angeles Junction Ry. Co.,* 22 Cal.2d 111 [137 P.2d 441] ; *Raggio* v. *Mallory,* 10 Cal.2d 723 [76 P.2d 660].) It has been repeatedly held that where different conclusions reasonably may be drawn from the evidence, by different minds, the trial court's findings of fact are conclusive. (*Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427 [45 P.2d 183] ; *Bellon* v. *Silver Gate Theatres, Inc.,* 4 Cal.2d 1 [47 P.2d 462] ; *Raggio* v. *Mallory, supra*; *Vosburgh* v. *Meda,* 61 Cal.App.2d 396 [143 P.2d 41] ; *Tobola* v. *Wholey,* 75 Cal.App.2d 351 [170 P.2d 952].)

It is our conclusion that the trial court's finding here that the quarterly returns of retail sales filed by appellants were not "full, true and/or accurate returns of plaintiff's retail sales" was supported by substantial evidence, and therefore must be held conclusive on appeal.

The judgments are affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied September 5, 1950, and appellants' petition for a hearing by the Supreme Court was denied October 2, 1950.