[Civ. No. 47589. Second Dist., Div. Five. Aug. 10, 1976.]

RILEY B'S, INC., Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

**COUNSEL**

Thompson & Zumbrunn and Lynn E. Zumbrunn for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Philip C. Griffin and Rodney Lilyquist, Jr., Deputy Attorneys General, for Defendant and Respondent.

## Opinion

**HASTINGS, J.**—Riley B's, Inc., plaintiff and appellant (appellant), filed a complaint against the State Board of Equalization of the State of California (Board), seeking a refund of state sales and use taxes previously paid in the sum of $3,439.87 plus interest. On April 7, 1975, the cause came on regularly for trial. No oral testimony was heard, as the matter was submitted upon a written stipulation of facts, and certain additional exhibits. The case presented the general question of whether Board was required to accept as conclusive the books and records of a taxpayer which were inconsistent with, and contrary to, additional information furnished by the taxpayer.

The trial court held that Board could base a tax assessment upon all the information obtained from the taxpayer, and that such an assessment was correct and proper. Accordingly, judgment was entered in favor of Board, and the corporation filed its notice of appeal.

### Statement of Facts

During the period October 1, 1966, through December 31, 1969, appellant operated three bars with adjoining premises in the City of Victorville, California. Each bartender's shift began with a separate cash reserve, and receipts at the end of each shift were deposited together in a safe. Records for each shift were maintained to show the cash register totals, cash drawer totals, total cash payouts, and net receipts. The bartenders were responsible for ordering and verifying the merchandise purchases, and were generally unsupervised by appellant's officers.

None of the officers of appellant took an active part in the operation of the bar during the audit period, other than a daily reconciliation of the receipts with the cash register tapes. The policy of appellant's bars was to serve ⅞ ounce of liquor in each mixed drink, and 1¼ ounces of liquor in each cocktail. Board conducted the audit on the basis of 1 ounce of liquor in mixed drinks, 1½ ounces until December 31, 1967, and 1¼ ounces thereafter in cocktails, and allowed an additional 8 percent for spillage and overpouring.

Appellant timely filed its sales and use tax returns with Board for that time period. Board audited the returns, using a recognized and standard

accounting procedure. It examined the appellant's general ledger, purchase journal, purchase invoices, sales journal, disbursement journal, cash register tapes, and income tax returns.

Board determined from its analysis that, although the appellant's books and records were in agreement with each other, they did not reflect all taxable sales, nor disclose the correct amount of tax liability.

For the period October 1, 1966, through December 31, 1967, Board found no significant difference between the recorded and actual sales of appellant. For the period January 1, 1968 through December 31, 1969, however, recorded taxable sales were found to be understated in the amount of $57,698.

Board's analysis of appellant's bar purchases and sales figures are set forth in the footnote.[1]

Board determined that liquor purchases ex-tax by appellant in the amount of $14,061 was taxable at cost on the basis that it had been consumed during the audit period by the employees of the corporation and/or provided to customers without charge. The corporation had reported $300 of this amount on returns filed, leaving a balance of $13,761.

After various notices of determination and redetermination, Board issued a notice of redetermination, and on March 31, 1972, appellant paid the amount set forth under protest and filed a claim for refund. The amount in controversy between appellant and Board is $3,413.23, consisting of $2,884.90 in tax and $528.33 in interest paid, plus interest on said sum as provided by law.

| [1] | 10/1/66 to 12/21/67 | 1/1/68 to 12/31/69 | Total |
|---|---|---|---|
| Audited Bar Sales | $232,802.00 | $272,266.00 | $505,068.00 |
| Recorded Bar Sales | 232,701.00 | 214,490.00 | 497,191.00 |
| Amount of Difference | $ 101.00 | $ 57,776.00 | $ 57,877.00 |
| Percentage of Error | 0% | 26.9% | 12.9% |

CONTENTIONS OF PARTIES

█ Board states the sole issue involved is whether it was authorized to conduct its audit based upon information furnished by appellant although not contained in the books and records of appellant.

Appellant states the issue somewhat differently. It says: "[I]f all books, records and receipts required by law have been maintained by a businessman in good faith in the course of conducting a business and further if these business records are in agreement with each other, no extrinsic method or data should be utilized in assessing a tax deficiency."

ARGUMENT AND DISPOSITION

Appellant first notes that Board stipulated that its records examined by Board for the audit period were comprehensive and in agreement with each other. Appellant then argues that Board cannot use an arbitrary audit method to compute a taxpayer's sales and use tax in the absence of a showing that the taxpayer's records are inadequate, incomplete, or otherwise faulty.

Appellant concedes that no California case has stated that records must first be deficient before Board can conduct an audit as in the instant case. Appellant adroitly seeks to use the reasoning of *Maganini* v. *Quinn*, 99 Cal.App.2d 1 [221 P.2d 241] to its advantage although the court concluded that Board *could* use the same audit method as was used in the instant case. The court in *Maganini* found that the retail establishment in question did not record the sales on a cash register tape; thus, the owner had no records to support the retail sales other than the deposits made for said sales. The court also found that adequate records were not maintained as was required in the sales and use tax regulations codified in subchapter 4 of title 18 of the California Administrative Code.[2]

---

[2]Section 1698 reads in pertinent part as follows: "(a) GENERAL. Every seller, retailer, and person storing, using or otherwise consuming in this state tangible personal property purchased from a retailer, . . . shall keep adequate and complete records showing:

"(1) Gross receipts from sales . . . of tangible personal property (including any services that are part of the sale . . .) made within California irrespective of whether the seller . . . regards the receipts as taxable or nontaxable.

"(2) All deductions allowed by law and claimed in filing returns.

"(3) Total purchase price of all tangible personal property purchased for sale or consumption . . . in California.

"These records must include the normal books of account ordinarily maintained by the average prudent businessman engaged in the activity in question, together with all

Appellant contends that *Maganini* establishes the rule that calculating theoretical sales is valid where the actual sales are unknown or unrecorded, but it is improper where comprehensive business records are maintained. The reasoning of *Maganini* does not permit such rationalization. To the contrary, it supports Board's computation.

The *Maganini* court relied primarily upon sections 7054 and 6481 of the Revenue and Taxation Code, and decisional law found in *People* v. *Schwartz,* 31 Cal.2d 59 [187 P.2d 12] and *Rathjen Bros.* v. *Collins,* 50 Cal.App.2d 765 [123 P.2d 925]. At pages 4 and 7 in *Maganini,* the court said of the code sections: "Authority to verify the accuracy of any sales tax return is given in section 7054 of the Revenue and Taxation Code which provides: 'The board or any person authorized in writing by it may examine the books, papers, records, and equipment of any person selling tangible personal property and any person liable for the use tax and may investigate the character of the business of the person in order to verify the accuracy of any return made, or, if no return is made by the person, to ascertain and determine the amount required to be paid.' [¶] The statute further provides, section 6481: 'If the board is not satisfied with the return or returns of the tax or the amount of tax required to be paid to the State by any person, it may compute and determine the amount required to be paid upon the basis of the facts contained in the return or returns *or upon the basis of any information within its possession or that may come into its possession. . . .*' [¶] The code sections hereinbefore quoted clearly contemplate an examination 'behind the books,' so to speak, in which original records, such as purchase invoices, sales slips, cash register tapes, and inventory records may be audited and analyzed. There is no requirement that such audit be restricted to pointing out falsifications, errors or omissions, if any, in the books of account themselves."

The above reference to "books" and the right to inspect the records upon which the books are based, clearly refutes appellant's argument and supports the action taken by Board.

■ *Maganini* also cites two cases, *supra,* that placed the burden of proof on appellant to explain the disparity. Beginning on page 6 in *Maganini,* the court stated: "In the Alcoholic Beverage Control Act there is a provision that distilled spirits acquired by a rectifier shall be

---

bills, receipts, invoices, cash register tapes, or other documents of original entry supporting the entries in the books of account as well as all schedules or working papers used in connection with the preparation of tax returns. . . ."

presumed to have been sold in this state. (Deering's Gen. Laws, Act. 3796, § 24.2.) Commenting on this presumption, the court in *Rathjen Bros.* v. *Collins, supra,* said on page 770-771: 'The presumption is based on common sense. If, from the total gallonage possessed or acquired during the taxable year, there is deducted the gallonage on hand at the close thereof, plus the gallonage disposed of in nontaxable sales, plus a reasonable loss tolerance, the resulting figure is presumptively the gallonage disposed of in taxable sales. If, as here, there is a large quantity of liquor unaccounted for it is up to the wholesaler to show that it was disposed of in nontaxable transactions. But, unless he does so, the board has established a prima facie case as to the gallonage disposed of in taxable transactions.' "[3]

In *People* v. *Schwartz, supra,* 31 Cal.2d 59 cited by *Maganini,* the Supreme Court sustained a "behind the books" examination. There the Board examined the taxpayer's bank deposits and disbursements and found that they substantially exceeded the gross receipts from sales reported. The Supreme Court concluded, at page 64: "The taxpayer's records disclose that, during the period in question, he received in cash from sales (or otherwise accounted for and adjusted) an amount substantially smaller than he had paid out in cash and by check. In the absence of explanation by the taxpayer . . . it reasonably may be concluded that the total of money received . . . is the amount of the additional taxable sales."

Here, as in *Rathjen Bros.* and *Schwartz,* the taxpayer has the burden to explain the 26.9 percent error computed by the Board. The only explanation offered by appellant for the lost inventory is the human error that is unavoidable in the process of mixing drinks. An 8 percent margin was allowed appellant (the same as *Maganini*) for the "human" element, and beyond that, there has been no accounting for the missing inventory. In the absence of evidence that Board's 8 percent allowance was unreasonable, appellant's excuse was not sufficient to shift the burden of proof back to Board. Very damaging to appellant is the fact that Board's audit from October 1, 1966, to December 21, 1967 verified appellant's reported sales. However, Board's audit (using the same

[3]The Alcoholic Beverage Control Act of 1931, section 24.2 has been replaced by Revenue and Taxation Code section 32211, as follows: "It shall be presumed that all distilled spirits acquired by any taxpayer have been sold in this State by him unless one of the following is proved to the satisfaction of the board, in reports on forms prescribed by the board:

"(a) That the distilled spirits are still in the possession of the licensee. . . ."

procedure) from January 1, 1968, to December 31, 1969, shows a shortage of $57,776 in reported sales. It is unlikely that the "human" element that was practically nonexistent in the first period suddenly became a force majeure in the second period.

We agree with Board that our affirmance of appellant's argument would allow an unscrupulous taxpayer to avoid his tax liability simply by maintaining inaccurate but voluminous and consistent records. Tax evasion would be facilitated and the Board's statutory duty to fairly administer and enforce the tax laws would be effectively thwarted.

The judgment is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.