[Civ. No. 21082. Third Dist. Oct. 18, 1982.]

FLOYD D. PAINE et al., Plaintiffs and Appellants, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

439

COUNSEL

Surr & Hellyer and John K. Mirau for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Edward P. Hollingshead and Derry L. Knight, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**CARR, J.**—In this action for the refund of sales tax paid under protest (Rev. & Tax. Code, § 6933),[1] the plaintiff-taxpayers (plaintiffs) claim the State Board of Equalization (the Board) erroneously assessed and collected certain sales taxes. This claim was rejected in a trial by the court and judgment was entered for defendant.

Plaintiffs appeal, contending: (1) they proved the sales at issue were made pursuant to exemption certificates, which shifted any liability for taxation to the purchasers; (2) the audit test used by the Board was inaccurate and could not be verified by evidence of subsequent sales; and (3) the trial court failed to make findings of fact on material issues. We find each contention without merit and shall affirm.

*The Facts*

Plaintiffs owned and operated a retail grain and feed store (Norm's Hay) from April 1972 until August 1977, selling hay, grain, pet food and related products. Feed sold "for any form of animal life of a kind the products of which ordinarily constitute food for human consumption" is exempt from sales tax. (§ 6358, subd. (b).) Sellers of such tax-exempt feed should obtain an "exemp-

---

[1]All further statutory references shall be to the Revenue and Taxation Code unless otherwise noted.

tion certificate" from the purchaser certifying the feed is to be used for a tax-exempt purpose, subject to an exception for feed of a kind ordinarily used *only* for exempt purposes. (Cal. Admin. Code, tit. 18, § 1587, subd. (c).)[2]

Plaintiffs maintained on file an exemption certificate from each customer who purported to purchase tax-exempt feed. When a customer asserted a sale was tax exempt, the file was checked to ascertain whether the customer had a certificate on file, unless this was already known to the salesperson. If no certificate was on file, the customer could fill out one. The sale was then written up on an invoice which included the product sold and the price but *did not* include the name or address of the purchaser unless it was a credit sale or to be delivered.[3]

In 1975 the Board conducted a sales and use tax audit of plaintiffs' business for the period April 1, 1972, through June 30, 1975 (the audit period). The total gross receipts for the audit period were $1,680,519. Of this, the plaintiffs claimed $1,326,873, or roughly 80 percent were tax exempt. The field auditor rapidly discovered it was impossible to verify the amount of tax-exempt sales as the invoices could not be correlated to exemption certificates. In an effort to verify plaintiffs' claim a test was designed by the auditor which was performed by plaintiffs during a 13-day period in July 1975. During this test period plaintiffs put the name of each purchaser on the invoice and informed the purchaser the claimed exemption was subject to verification by the Board. During the test period approximately 53 percent of sales were to customers who claimed an exemption. Applying this percentage to the audit period, the Board concluded the total allowable exempt receipts for this period were $870,451. This adjustment increased plaintiffs' taxable sales for the audit period by some $455,000, with an additional sales tax of $25,739.46. Including statutory interest, the total assessment was $34,610.50.

### DISCUSSION

### I

Initially plaintiffs contend they satisfied their burden of proving the sales claimed as exempt were made pursuant to exemption certificates. The trial

---

[2]Title 18, California Administrative Code, section 1587, subdivisions (c)(1), provides in relevant part: "Sellers of feed should secure feed exemption certificates with respect to sales of feed of a kind customarily used both to feed animal life of a kind the products of which ordinarily constitute food for human consumption, and to feed animal life not of this kind. . . . [¶] Sellers of feed need not secure feed exemption certificates with respect to sales of feed of a kind ordinarily used only in the production of meat, dairy or poultry products for human consumption. . . . In the absence of evidence to the contrary, it will be presumed that all such feeds are to be used in producing meat, dairy or poultry for human consumption."

[3]There was testimony that during the period in question delivery sales accounted for 5 to 15 percent of the total dollar volume; credit sales accounted for 5 to 10 percent.

court expressly found to the contrary, concluding plaintiffs did not establish the claimed exclusions. We concur.

In a suit for tax refund, the burden of proof is on the taxpayer (*Flying Tiger Line* v. *State Bd. of Equal.* (1958) 157 Cal.App.2d 85, 99 [320 P.2d 552]), not only to demonstrate the Board's determination is incorrect, but also to produce evidence from which a proper tax determination can be made. (*People* v. *Schwartz* (1947) 31 Cal.2d 59, 64 [187 P.2d 12].) The taxpayer must affirmatively establish the right to a refund of the taxes by a preponderance of the evidence (*Maganini* v. *Quinn* (1950) 99 Cal.App.2d 1, 8 [221 P.2d 241]), and cannot simply assert error and shift to the state the burden of justifying the tax. (*Hall* v. *Franchise Tax Board* (1966) 244 Cal.App.2d 843, 848 [53 Cal.Rptr. 597].)

The sales tax is imposed upon *retailers*. (§ 6051.)[4] It is a tax on the *seller*, not on the purchaser. (*Market St. Ry. Co.* v. *Cal. St. Bd. Equal.* (1955) 137 Cal.App.2d 87, 103 [290 P.2d 20].) The seller may pass the tax on to the buyer, but the tax itself is imposed on the seller, and the payment thereof is primary obligation of such seller. (*Ibid.*) All gross receipts are *presumed* subject to tax until the contrary is established and the burden of proving the sale is not subject to tax is upon the person who makes the sale. (§ 6091.)[5]

They urge this burden of proof was sustained by their maintenance of exemption certificates for each purchaser who claimed the sale was exempt from tax; that they were not required to cross-reference exemption certificates to individual sale invoices. The requirement of cross-referencing was added to the California Administrative Code after the audit period.[6] Plaintiffs assert such requirement is retroactively being applied to them and is a denial of due process. They further urge that the issue of whether sales claimed as exempt were made pursuant to an exemption certificate was proven by their testimony that they always checked the certificate when an exempt sale was claimed and this

---

[4]Section 6051 provides in relevant part: "For the privilege of selling tangible personal property at retail a tax is hereby imposed upon all retailers. . . ."

[5]Section 6091 provides: "For the purpose of the proper administration of this part and to prevent evasion of the sales tax it shall be presumed that all gross receipts are subject to the tax until the contrary is established. The burden of proving that a sale of tangible personal property is not a sale at retail is upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property is purchased for resale."

[6]On March 19, 1976, subdivision (c)(3), was added to title 18, California Administrative Code, section 1587, to provide: "Exemption certificates should be complete with the information specified in the above forms, including the names and addresses of the purchasers, in order to constitute adequate support for exemptions claimed by sellers. In addition, the invoices on sales claimed as exempt should specify the names of the purchasers in order to relate them to exemption certificates."

satisfied their reporting duty; that under section 6421, subdivision (a), any tax liability was shifted to purchasers who had falsely claimed an exemption.[7]

We conclude the taxpayer's position is an unsuccessful attempt to shift their tax liability to other persons, with full knowledge that their incomplete records render impossible collection by the state of the tax from those allegedly liable pursuant to section 6421. Their reliance on their own unsupported statements that they always determined that an exemption certificate was on file before making a tax exempt sale is misplaced. The trial court found against plaintiffs in this issue and we agree the state is entitled to some documentation in the regularly kept records that the claimed sales were in fact tax exempt. (*People* v. *Schwartz, supra,* 31 Cal.2d at p. 64.) Plaintiffs are not entitled to an exemption merely because they say they are; they must offer some credible evidence of exemption entitlement. The field auditor's opinion was that plaintiffs' lax record keeping did not pass unnoticed by their customers, who realized they could claim an exemption without fear of being traced and forced to prove they were using the feed for an exempt purpose. This resulted in the overall claimed exemptions for the audit period approximating 80 percent of all sales, as opposed to the 53 percent figure obtained during the test period.

Plaintiffs incorrectly assert the Board is attempting to retroactively impose the cross-referencing requirement on them. (See fn. 6.) During the period in question, they were required to keep adequate records supporting all claimed exemptions and deductions, from which the Board could verify the accuracy of their returns. (§§ 7053, 7054; tit. 18, Cal. Admin. Code, § 1698, subd. (a).)[8]

---

[7]Section 6421, subdivision (a), provides: "If a purchaser certifies in writing to a seller that the property purchased will be used in a manner or for a purpose entitling the seller to regard the gross receipts from the sale as exempted by this chapter from the computation of the amount of the sales tax, and uses the property in some other manner or for some other purpose, the purchaser shall be liable for payment of sales tax as if he were a retailer making a retail sale of the property at the time of such use, and the cost of the property to him shall be deemed the gross receipts from such retail sale. The certificate shall relieve the seller from liability for the sales tax only if it is taken in good faith."

[8]Section 7053 provides in relevant part: "Every seller [and], every retailer. . .shall keep such records, receipts, invoices, and other pertinent papers in such form as the board may require."

Section 7054 provides in relevant part: "The board or any person authorized in writing by it may examine the books, papers, records, and equipment of any person selling tangible personal property and any person liable for the use tax and may investigate the character of the business of the person in order to verify the accuracy of any return made, . . ."

Title 18 California Administrative Code section 1698 subdivision (a) provides in relevant part: "Every seller [and], retailer, shall keep adequate and complete records showing: [¶] (1) Gross receipts from sales or rental payments from leases of tangible personal property (including any services that are a part of the sale or lease) made within California irrespective of whether the seller or lessor regards the receipts as taxable or nontaxable. [¶] (2) *All deductions allowed by law and claimed in filing returns.* [¶] (3) Total purchase price of all tangible personal property purchased for sale or consumption or lease in California. These records must include the normal books of account ordinarily maintained by the average prudent businessman engaged in the activity in question, *together with all bills, receipts, invoices, cash register tapes, or other documents* of original entry *supporting the entries in the books of account* as well as all

This requirement preexisted the eventual inclusion of the cross-referencing system in the regulatory scheme. Plaintiffs were not required at the time in question to use the name-on-the-invoice method, but were required to maintain *some* sort of record from which the Board could verify each claimed exempt sale.[9] This they failed to do.

Nor were they excused from their tax liability by merely maintaining a file of exemption certificates. (*Riley B's, Inc.* v. *State Bd. of Equalization* (1976) 61 Cal.App.3d 610, 617 [132 Cal.Rptr. 520].) The Board was authorized to conduct a "behind the books" audit of plaintiffs' invoices, sales slips, etc. to verify the claimed exemptions. (*Maganini* v. *Quinn, supra,* 99 Cal.App.2d at p. 7.) This audit revealed the records were so incomplete as to make verification of the claimed exemptions and identification of purchasers asserting such exemptions impossible. While the average citizen may find the record keeping required by the various taxing authorities to be onerous, excessive and vexatious, taxes appear to be a permanent and necessary part of our governmental structure. To fairly spread those taxes among the persons responsible for their payment mandates some basis for the assessment thereof. Records maintained by the taxpayer represent the most economical and least intrusive method for calculation. Fairness dictates that those persons responsible for paying the tax should maintain sufficiently complete records that the Board or other tax collecting agencies can determine if the correct amount of taxes have been paid. If the records are so deficient that a proper audit cannot be made, the defaulting record-keeping taxpayer must bear the consequences. The trial court properly denied the refund.

## II

Plaintiffs next urge the test conducted by the Board was defectively designed and invalidly applied and that evidence of sales in periods subsequent to the audit were erroneously admitted as support for the conclusion reached by the test. The test should therefore be disregarded. The trial court found sales during the test period were representative of those during the audit period and that the condition and conduct of plaintiffs' business remained substantially similar during and after the audit period. We conclude the trial court's findings are supported by substantial evidence and must be upheld. (*Maganini* v. *Quinn, supra,* 99 Cal.App.2d at p. 9.)

schedules or working papers used in connection with the preparation of tax returns." (Italics added.)

[9]For example, plaintiffs could have maintained a separate ledger for each person with an exemption certificate showing the date and amount of each tax exempt sale, or a chronological ledger showing all tax-exempt sales and purchasers. The name-on-the-invoice method was not required of plaintiffs but was merely the easiest and most logical method of verification, as recognized by its eventual adoption by the Board.

Our review begins with the presumption the Board's determination as to the amount of tax owed is correct. (*Marchica* v. *State Board of Equalization* (1951) 107 Cal.App.2d 501, 510 [237 P.2d 725].) The burden of overcoming this presumption is on the taxpayers. (*Ibid.*) Plaintiffs advance three arguments in support of their assertion they overcame such presumption.

First, they urge the test results are distorted as plaintiffs were required to "warn" purchasers during the test period that their claimed exemptions would be subject to verification by the Board. The claimed effect of this procedure was to make many customers "back-offish" as they did not wish to be audited; that many customers failed or refused to sign the invoices claiming exemptions causing exempt sales to drop to 53 percent of the total as opposed to 80 percent during the audit period. A reasonable inference from these statistics is that many of the claimed exemptions during the audit period were not valid. While conceding the test may have weeded out the false exemption claims, plaintiffs urge the untruthful purchasers, rather than the sellers, are liable for the tax under section 6421. (§ 6421.) This contention, as the trial court so aptly observed, leaves the Board in the same position as that which necessitated the audit. Plaintiffs acknowledge the sales may be taxable, but cannot show who is liable for it. Were we to adopt plaintiffs' position the Board would be without a remedy. Having failed to meet their burden of producing evidence from which another and proper determination can be made (*People* v. *Schwartz, supra,* 31 Cal.2d at p. 64), plaintiffs cannot merely assert error and shift the burden to the state. (*Hall* v. *Franchise Tax Board, supra,* 244 Cal.App.2d at p. 848.) Moreover, plaintiffs apparently concede that the test and warning produced an accurate representation of tax-exempt sales during the audit period. They are simply urging the tax liability for the falsely claimed exemptions should fall on the unidentifiable purchasers who made the false claims of exemption.

Plaintiffs next urge the test results were inaccurate as the "product mix" they sold gradually changed and was different during the test period than during the audit period. For example, the sale of "hay cubes" (a replacement feed for bailed hay) was relatively slow during the audit period, but increased during the test and postaudit periods, resulting in an increase in taxable sales. The evidence produced by the Board was that the sale of "hay cubes" comprised only 13 percent of total sales during the test period and would not distort the test results, particularly as the exact volume of hay cube sales during the audit period had not been determined by plaintiffs. By removing the sale of hay cubes from the test data the exempt ratio for other products rose only from 53 to 56 percent. Some adjustment for the hay cube sales had to be made in the data, and as the ratio of exempt sales for the hay cubes themselves was 70 percent taxable, 30 percent nontaxable, the result could only lower the overall exemption ratio. The conclusion by the Board's auditor was that hay cube sales did not

distort the test results. The trial court's finding the test results were representative of sales during the audit period is supported by substantial evidence.

Plaintiffs reprise their previous contentions in urging the trial court erred in allowing evidence of the postaudit tax returns of plaintiffs which reported their percentage of exempt sales dropped to 64 percent and 56 percent. Evidence of the postaudit period is claimed inadmissible because the circumstances were not substantially similar to those during the audit period because of an increase in hay cube sales, a continuation of the requirement that purchasers claiming an exempt sale sign the invoice, and plaintiffs' refusal to allow persons who failed to claim an exemption during the test to claim one during the postaudit period. Although continuing to verify the exemptions by the name-on-the-invoice method undoubtedly reduced false exemption claims, substantial evidence supports the trial court's finding the condition and conduct of plaintiffs' business remained substantially unchanged through the audit test and postaudit periods. These hay cube sales notwithstanding, plaintiffs' product mix remained essentially unchanged, sales of nonexempt pet food remained stable, the type of customers remained constant, and the same employees were involved throughout.

## III

Plaintiffs' final contention is the trial court erred in failing to make findings of fact and conclusions of law on two allegedly material issues. (See generally, 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 337, p. 3139.) These issues were the effect of section 6421 on the plaintiffs' liability and whether plaintiffs were required to use the name-on-the-invoice method for cross-referencing exemption certificates. ■ The failure to make an express finding is not prejudicial error where: (1) the findings actually made are sufficient to support the judgment; and (2) the findings would necessarily have been adverse to the protesting party. (*McAdams* v. *McElroy* (1976) 62 Cal.App.3d 985, 996 [133 Cal.Rptr. 637]; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 343, p. 3144.) These exceptions both apply to render unnecessary such findings.

Any finding with regard to section 6421 would only have been relevant had the plaintiffs established the claimed exempt sales were in fact to purchasers who claimed the sales were exempt and had exemption certificates on file. The trial court concluded the plaintiffs failed to carry the burden of proving their entitlement to the claimed exemptions; the presumption of taxable sales and the responsibility for paying that tax therefore remained on the taxpayer-sellers. A finding on section 6421 was unnecessary and would have been adverse to plaintiffs in any event.

The same rationale applies to any finding on the cross-referencing require-ment. At the time in issue, the general statutory and regulatory bookkeeping re-quirements required only that taxpayers substantiate their claimed deductions and exemptions in some manner through the maintenance of adequate records. (§ 7053; tit. 18, Cal. Admin. Code, § 1698.) The trial court found plaintiffs failed to meet this general record keeping requirement. No finding was necessary on the particular method plaintiffs should have used, as no particular method was required. Plaintiffs simply failed to keep records adequate to substantiate their claimed exemptions as required by law and were thereby unable to overcome the statutory presumption they were liable for the assessed sales tax.

The judgment is affirmed.

Evans, Acting P. J., and Blease, J., concurred.