282 F.3d 1233
 In re RENOVIZOR'S, INC., Debtor.
California State Board of Equalization, Appellee,
v.
Renovizor's Inc., aka The Hang-Ups aka The Rose Collection, Debtor-Appellant.
 No. 99-15827.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted November 1, 2000.
 Submission Vacated and Question Certified to the California Supreme Court January 3, 2001.
 Request for Certification Denied February 28, 2001.
 Resubmitted March 7, 2002.
 Filed March 14, 2002.
 
 David M. Kirsch, San Jose, CA, for the debtor-appellant.
 Bill Lockyer, Attorney General; Randall P. Borcherding, Supervising Deputy Attorney General; Julian O. Standen, Deputy Attorney General, Office of the Attorney General, San Francisco, CA, for the appellee.
 Appeal from the United States District Court for the Northern District of California; Jeremy Fogel, District Judge, Presiding. D.C. No. CV-98-20469-JF.
 Before: B. FLETCHER, O'SCANNLAIN, and GOULD, Circuit Judges.
 GOULD, Circuit Judge.
 
 
 1
 Debtor, Renovizor's, in bankruptcy court, objected to a claim filed by the California State Board of Equalization ("SBE"). In the trial held in bankruptcy court, SBE's claim for civil tax fraud was upheld. On appeal, the United States District Court for the Northern District of California affirmed the bankruptcy court. Renovizor's now appeals to our Court. The primary issue that we must decide is whether under California law civil tax fraud must be proved by clear and convincing evidence, as appellant Renovizor's contends, or instead by a preponderance of the evidence, which was the standard adopted in the bankruptcy court and affirmed by the district court. We hold that clear and convincing evidence must be shown to establish civil tax fraud under California law. We therefore reverse the decision of the district court and remand to the district court so that it may remand to the bankruptcy court for further proceedings consistent with our opinion.
 
 I.
 
 2
 Renovizor's was an interior decorating and remodeling company that sold decorating products and provided residential remodeling services. Renovizor's incorporated in late 1984, commenced business in the second quarter of 1985, and ceased operations in 1994.
 
 
 3
 In June 1992, the SBE commenced an audit of the sales tax returns filed by Renovizor's from April 1, 1989 to March 31, 1992. The SBE later expanded the audit to include the period from April 1, 1985 to March 31, 1989.
 
 
 4
 An audit report admitted into evidence at trial in the bankruptcy court forms the main basis for the SBE's tax assessment and its finding that Renovizor's engaged in civil tax fraud by consistently under-reporting its income. The SBE auditor, Roberta Ross ("Ross"), testified that her progress was made difficult by lack of documentation and records from Renovizor's. The audit report states that no work papers were attached to the sales tax returns and that sales invoices that were provided were impossible to reconcile with the returns. According to the audit report, "[c]ompleted sales invoices were filed in customer files, bookcases, vendor files, desks and, from a conversation with store personal [sic], the owners and/or employees' homes." The audit report finds that Renovizor's failed to produce any general ledgers, sales journals, or "dailies." There was also evidence of very questionable practices: the report also discloses the existence of a separate file for cash receipts and payments, which Renovizor's had not disclosed. The audit report states that Renovizor's "indicated that during the audit period some records had been stolen along with a computer."
 
 
 5
 The absence of records made it impossible directly to compare the company's sales as reported on sales tax returns with the actual sales. Thus, the audit used a "mark-up" derived from an analysis of available business records in the third quarter of 1992 to estimate actual sales over the 1989-1992 period. Having estimated actual sales for 1989-1991, the SBE calculated a tax assessment based on the under-reporting of income. Using the assumption that Renovizor's had under-reported income during 1985-1988 in the same proportion as it did in 1989-1992, the SBE also calculated an assessment of tax liability for the earlier time period.
 
 
 6
 In addition to the tax assessment, Ross recommended imposing an additional twenty-five percent fraud penalty. Her recommendation was based, in part, on a fax Renovizor's sent to Lane Financial ("Lane fax"). The cover sheet of the Lane fax set forth a gross sales figure of almost $1 million in 1991 (compared to Renovizor's reported sales of $172,121). Attached to the Lane fax was an unaudited financial statement dated June 30, 1990, indicating "Retail Taxable Sales" of $405,372 for the preceding twelve months (compared to Renovizor's reported taxable sales of $102,018 for the same period). On July 16, 1993, the SBE's assessment became final.
 
 
 7
 Renovizor's ceased operations and filed for Chapter 11 protection on June 22, 1994. Renovizor's bankruptcy case was subsequently converted to a Chapter 7 proceeding. The SBE filed a proof of claim for $442,194.18, including the sales tax deficiency, fraud penalty, and interest.
 
 
 8
 Renovizor's objected to the SBE's claim. The bankruptcy court conducted a trial and published an opinion affirming the SBE tax and fraud claims. In Re Renovizors, Inc., 214 B.R. 232 (Bankr.N.D.Cal. 1997). The bankruptcy court concluded: (1) the SBE's assessment for under-reported sales taxes was valid; (2) the SBE must prove fraud by a preponderance of the evidence, not by clear and convincing evidence; and (3) fraud had been proved by a preponderance of the evidence. On October 2, 1997, the bankruptcy court entered its order allowing the SBE's claim in full.
 
 
 9
 On appeal, the district court affirmed the bankruptcy court in an unpublished order. Renovizor's filed a timely notice of appeal to the Ninth Circuit. We reverse and remand for further proceedings.
 
 II.
 
 10
 State law determines the validity of a creditor's claim against a bankrupt estate, including the allocation of the appropriate burden of proof in bankruptcy court. Grogan v. Garner, 498 U.S. 279, 283-84, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The SBE must assess a twenty-five percent penalty on a deficiency that is "due to fraud or an intent to evade" the payment of taxes. Cal. Rev. & Tax.Code § 6485 (2000). The bankruptcy court ruled, and the district court affirmed, that preponderance of the evidence was the appropriate standard for civil tax fraud in California. Applying this evidentiary standard, the bankruptcy court determined that civil tax fraud existed for 1985-1992. Renovizor's, however, contends that civil tax fraud must be proved by clear and convincing evidence.
 
 
 11
 The bankruptcy court stated that the determination of the proper standard of proof "is important to the result" of the case. The court assessed whether the SBE met its evidentiary burden with evidence of "badges of fraud" as described in Alexander Shokai, Inc. v. Commissioner, 34 F.3d 1480, 1487 (9th Cir.1994), which applied a clear and convincing standard. Here, the evidence of fraud considered by the bankruptcy court and by the district court is circumstantial; there is no direct evidence establishing an intent by Renovizor's to defraud. The evidence includes: reporting of taxable income, the Lane fax, implausible and inconsistent stories given during the audit, failure to maintain adequate records, and the existence of a separate, undisclosed drawer for cash sales. Some of this evidence, however, is inapplicable to the 1985-1989 audit period.
 
 
 12
 By our Order of January 3, 2001, we certified to the California Supreme Court the issue of whether civil tax fraud required proof by clear and convincing evidence, or instead a preponderance of the evidence. The California Supreme Court in its Court Minutes of February 28, 2001, declined to accept the case for certification. It is therefore our duty to decide this issue of California law.
 
 
 13
 There is significance here to the standard of proof. If the proper standard for civil tax fraud requires proof by clear and convincing evidence, we will reverse and remand for further proceedings consistent with this legal standard. It is possible that the evidence would not support a finding of fraud for the 1989-1992 period under the clear and convincing standard. It is possible that the clear and convincing standard would not permit sustaining the fraud finding for the 1985-1989 period, which was calculated by extrapolating evidence relating to the 1989-1992 period. SBE's tax assessment, including the fraud penalty and interest, might be reduced or even eliminated upon remand if the clear and convincing standard applies. In contrast, if the preponderance of evidence standard is applicable in a civil tax fraud case, we will affirm the decision below, having determined that the other issues raised do not require reversal. The determination of the appropriate standard of proof in California for civil tax fraud is dispositive of this appeal.[1]
 
 
 14
 Marchica v. State Board of Equalization, 107 Cal.App.2d 501, 237 P.2d 725 (Cal.Dist.Ct.App.1951), a court of appeal decision, addresses California's burden of proof in civil tax fraud cases. In Marchica, the taxpayer sought a refund from the SBE for sales taxes and fraud penalties. In its ruling, the court quoted three federal appellate decisions that used a "clear proof" or "clear and convincing proof" standard for tax fraud. Id. at 730.
 
 
 15
 In contrast, the bankruptcy court here relied on Liodas v. Sahadi, 19 Cal.3d 278, 137 Cal.Rptr. 635, 562 P.2d 316 (1977), a decision of the California Supreme Court and a case that deals with civil fraud not tax fraud. In Liodas, the California Supreme Court noted that California appellate courts were divided as to the correct standard of proof in civil fraud cases. Id. at 321-22. The court explained that "the decisions calling for a standard of proof by clear and convincing evidence relied heavily on the presumption' against fraud and in favor of honesty and fair dealing...." Id. at 323 (footnote omitted). The court concluded that the enactment of the Evidence Code and earlier California Supreme Court cases should have "laid to rest the early belief that civil fraud must be proved by more than a preponderance of the evidence." Id. Relying on California Evidence Code section 115 ("section 115"), which provides that "[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence," the court held that the preponderance standard applies to issues of fraud in civil cases, unless a statute or relevant case law specifically provides otherwise. Id. at 323-24.
 
 
 16
 Following Liodas, the bankruptcy court concluded that there was no California statute or court decision establishing an exception to the default preponderance standard for civil fraud provided by section 115.[2] The bankruptcy court likened civil tax fraud to the civil sanction line of cases.
 
 
 17
 Renovizor's argues that Marchica should be considered pursuant to section 115 as "otherwise provided by law," and maintains that Marchica establishes an exception to the general requirement that civil fraud be proved by a preponderance of the evidence. The bankruptcy court and the district court rejected this contention because Marchica predated both section 115 and Liodas. However, this rationale is not necessarily controlling. When the legislature accepted circumstances "otherwise provided by law," it may have been preserving decisional law such as that of Marchica.
 
 
 18
 Renovizor's argues that the bankruptcy court erred by failing to consider, pursuant to section 115, state and federal case law and California administrative decisions, all of which require a clear and convincing evidence standard for civil tax fraud. To interpret the phrase "otherwise provided by law" in section 115, the district court referred to California Evidence Code section 160 ("section 160"), which defines "law" as "constitutional, statutory, and decisional law." The district court concluded that section 160 does not permit courts to rely on the law of other jurisdictions or California administrative decisions. If recourse to other state's laws were proper, the court reasoned, "California litigants could argue for the application of standards used in other jurisdictions every time those standards would prove more of an advantage than the general preponderance standard applicable to California civil cases." The district court affirmed the bankruptcy court, concluding that because "[n]o alternative standard is otherwise provided' by any statute or appellate decision since Liodas," the preponderance of the evidence standard should apply to civil tax fraud in this case.
 
 
 19
 To the extent it may be appropriate to consider other state and federal law, such law would support application of the clear and convincing standard here. Renovizor's cites federal tax court opinions and rules, federal appellate decisions (including Shokai, 34 F.3d at 1487), and law from fifteen states, all of which require clear and convincing proof for tax fraud. However, we fully agree with the district court that the law of states other than California and the law of federal jurisdictions is not what is meant by "otherwise provided by law" in section 115. That, by definition and common sense, is referring to the "constitutional, statutory and decisional law" of California.
 
 
 20
 Therefore other jurisdictions' law is immaterial, except insofar as it may be relevant to assessing whether the California decision of Marchica or Liodas should be controlling.
 
 
 21
 It might be argued that the command and rationale of Liodas governing civil fraud applies to civil tax fraud as well, answering the question of the applicable standard with simplicity. That in essence was how the Bankruptcy Court viewed it in its decision which was affirmed by the District Court. However, while the issue is not free from doubt, our independent assessment of Liodas leads us instead to conclude that the Supreme Court of California has not ruled directly on the issue.
 
 
 22
 Liodas is a case about fraud for breach of a fiduciary obligation. It is not a tax fraud case. The court in Liodas talks about civil fraud in general, but does not specifically address the standard of proof in civil tax fraud cases. Although Liodas attempts to lay out a general rule for standard of proof in civil fraud cases, it explicitly allows for differing rules in some fraud cases if other law specifically provides otherwise. Liodas, 137 Cal.Rptr. 635, 562 P.2d at 323. The difficult issue is whether this preserves other case law not expressly or impliedly overruled. We find no definitive answer to this question in the California precedents. Making our best assessment of this obscure question of California law, we conclude that Marchica remains relevant case law that specifically provides otherwise with regards to civil tax fraud cases. It lays out the standard of proof in civil tax fraud cases to be clear and convincing evidence instead of the preponderance of the evidence standard supported by Liodas. Marchica, 237 P.2d at 730. Liodas does not overrule or even mention the decision in Marchica. Therefore, while California law presents uncertainty, we cannot avoid concluding that Marchica, not Liodas, remains as a relevant precedent for civil tax fraud.
 
 
 23
 Our conclusion that Liodas does not govern and foreclose the issue is reinforced by the fact that California administrative agency determinations apparently apply the clear and convincing standard of proof in cases involving civil tax fraud. Renovizor's cites seven cases from the SBE appellate panel decided since Liodas that apply the clear and convincing evidence standard of proof to civil tax fraud. See Appeal of Castillo, 92-SBE-020 (1992); Appeal of Adickes, 90-SBE-102 (1990); Appeal of Armstrong, 85-SBE-146 (1985); Appeal of Bellamy, 85-SBE-002 (1985); Appeal of Lopez, 83-SBE-110 (1983); Appeal of Hutchinson, 82-SBE-21 (1982); Appeal of Wickman, 1981 WL 11741 (1981). None of these cases mentions Liodas. Thus, if we were to accept the SBE's position that Liodas applies and a preponderance of the evidence suffices to show civil tax fraud, then we would have to also conclude that something has gone awry in the California administrative process in which the clear and convincing evidence standard of proof continues to be applied after Liodas.
 
 
 24
 Renovizor's has not provided support from California case law for its contention that pursuant to section 160, "decisional law" refers to administrative determinations. However, even if California "decisional law" does not include administrative agency decisions, we perceive a significant practical impact for California citizens in the determination of the proper standard of proof. We hesitate to announce a rule of California law that may be contrary to a rule consistently applied by a California administrative agency responsible for pursuing civil tax fraud.
 
 
 25
 There is a conflict between Marchica, an intermediate California Court of Appeals decision dealing specifically with civil tax fraud, and Liodas, a subsequent California Supreme Court decision that deals generally with the standard to prove civil fraud but does not mention civil tax fraud. Because the more specific precedent was not overruled or mentioned by the California Supreme Court's general statement in Liodas, and because state administrative practice remained inconsistent with Liodas, we conclude that the proper standard of proof for civil tax fraud in California is somewhat unsettled, notwithstanding Liodas and Marchica, and California law provides no clearly controlling precedent. In another context, the California Supreme Court has stated that the determination of the applicable standards of proof "reflects the weight of the private and public interests affected as well as a societal judgment about how the risk of error should be distributed between the parties." Cynthia D. v. Superior Court, 5 Cal.4th 242, 19 Cal.Rptr.2d 698, 851 P.2d 1307, 1311 (1993) (citing Santosky v. Kramer, 455 U.S. 745, 754-755, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). The California Supreme Court is undoubtably in a better position than a federal court to make these policy choices affecting California and to assess the impact of a California administrative agency's decisions. However, despite our invitation the California Supreme Court has declined to clarify its law. We therefore must decide.
 
 
 26
 On the one hand, Liodas implements a preponderance of evidence standard for fraud that by its terms does not recite an exclusion for civil tax fraud. There may also be some benefit argued to be derived from a consistent fraud standard of proof across different lines of civil cases in California. On the other hand, the Marchica case, though from a lower California court than that in Liodas, deals specifically and explicitly with civil tax fraud. Liodas could have stated it was overruling Marchica but did not do so. Liodas could have stated that its rule applied to civil tax fraud as well as other fraud claims, but it did not do so. California administrative decisions continue to apply a clear and convincing evidence standard. It does not make sense that citizens of California could be served by one standard in the courts and another in administrative agencies. Given the uncertainty in California law, we are ultimately persuaded that our prediction of what the California Supreme Court would do with this issue is best made to conform with the weight of authority in other jurisdictions requiring clear and convincing evidence to show civil tax fraud. We conclude that this well-beaten path "reflects the weight of the private and public interest affected" and a "societal judgment about how the risk of error should be distributed." Cynthia D., 19 Cal.Rptr.2d 698, 851 P.2d at 1311 (citing Santosky, 455 U.S. at 754-55, 102 S.Ct. 1388). We accordingly reverse the judgment of the district court and remand with instructions that it reverse the Bankruptcy Court's opinion and order and remand for further proceedings consistent with requiring a clear and convincing evidence standard of proof to show civil tax fraud.
 
 
 27
 REVERSED AND REMANDED.
 
 
 
 Notes:
 
 
 [1]
 We rule on Renovizor's evidentiary challenges because they may affect the parties' rights in further proceedings. Renovizor's contends that nineteen pages of the audit report are inadmissible hearsay and do not meet the requirements of 803(6). We review the bankruptcy court's evidentiary rulings for abuse of discretionIn re Kim, 130 F.3d 863, 865 (9th Cir.1997). Renovizor's argues it was not the regular practice of SBE to include summarizations of tax returns in attitude reports. This issue was not raised below, and we decline to consider it on appeal. See Vision Air Flight Serv. v. M/V Nat'l Pride, 155 F.3d 1165, 1168 (9th Cir.1998).
 Renovizor's contends that the disputed pages are not trustworthy under the contemporaneity requirement of the exception because they look back four or more years to summarize tax returns filed many years before. But it is not necessary for every fact in the audit report to occur contemporaneously with the report where the audit report is a contemporaneous record of the audit review process.
 Renovizor's contends that it was SBE's burden to establish that Pereira, the senior tax auditor who authenticated the audit report, had personal knowledge of sources and methods of preparation of summaries or that Ross had such knowledge. The bankruptcy court concluded that the summaries were reliable because they were made at Ross' request as part of her review and audit. Renovizor's had ample opportunity to dispute the accuracy of these numbers (with its own audit or other evidence) or to present any evidence that would refute SBE's contention that the disputed pages were reliable and failed to do so. The bankruptcy court did not abuse its discretion in finding that SBE met its burden of establishing trustworthiness of the audit report.
 Renovizor's also contends that the disputed audit report pages are inadmissible summaries under FRE 1006, which permits summaries of records if records from which summaries were prepared are admissible and made available to the opposing party for examination and copying. FRE 1006 does not apply. It requires party proponents who wish to introduce summaries of voluminous evidence to give party opponents an opportunity to review the underlying evidence so that summaries accurately reflect originals. However, here the tax returns should have been in Renovizor's possession because the returns were its own records. Also, Renovizor's waived any objection under Rule 1006 because it did not make "a timely and appropriate objection that the underlying documents have not been made available as required by the rule." Jack B. Weinstein & Margaret Berger, Weinstein's Federal Evidence, § 1006.06[2] (Joseph M. McLaughlin ed., 2d. ed.2001).
 Renovizor's also disputes the bankruptcy court's upholding of SBE's applying the underreporting factor from 1989-1992 to the 1985-1989 period to extrapolate sales for the earlier period. Reconstruction of income through statistical methods is a factual question reviewed under a clearly erroneous standard. See In re Michael, 163 F.3d 526, 529 (9th Cir.1998). If the method used to calculate the estimate is not rational, the estimate should be rejected. See Paine v. State Board of Equalization, 137 Cal.App.3d 438, 187 Cal.Rptr. 47, 51 (1982). The reconstruction here was rational and the bankruptcy court's decision to allow it was not clearly erroneous.
 
 
 [2]
 The bankruptcy court also relied onWeiner v. Fleischman, 54 Cal.3d 476, 286 Cal.Rptr. 40, 816 P.2d 892 (1991) — the only California Supreme Court case interpreting the civil fraud standard with reference to Liodas and section 115, but again not dealing with tax fraud. The Weiner court distinguished cases imposing civil sanctions — requiring the preponderance standard of proof-from cases where important individual interests such as "termination of parental rights, involuntary commitment, and deportation" were at stake — requiring clear and convincing proof. Id. at 898.